LIVERPOOL & LONDON & GLOBE INS. CO. vs KEARNEY.

Opinion delivered June 14, 1898.

1. *Bill of Exceptions—Failure to File in Time.*

If appellant presents his bill of exceptions to the trial judge
within the time allowed, but the latter, through no fault of
the appellant failed to sign same within the time, allowed for
filing same, it will be treated as having been filed in time.

2. *Insurance—Loss of Inventory—Oral Evidence of Contents.*

Plaintiffs, who were merchants, saw a fire approaching their place
of business, and that its destruction was inevitable. Believing
that their books would be safer if taken to their residence,
than if left in their safe in the store, they took same from
their safe to their residence. In doing so, the book containing
their last inventory was lost. *Held*, The plaintiffs did not lose

their right to recover, and the trial court did not err in permitting oral evidence as to its contents.

*3. Iron Safe Clause—Substantial Compliance Sufficient.*

The iron safe clause in a policy of insurance is not a warranty and a strict compliance with its condition is not required. A substantial compliance with its terms is sufficient.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Action by Kearney & Wyse against the Liverpool & London & Globe Insurance Company. Judgment for plaintiffs. Defendant appeals. Affirmed.

This was a suit filed on July 15, 1895, in the United States Court for the Southern district of the Indian Territory, at Ryan, by Kearney & Wyse, a partnership composed of T. K. Kearney and J. W. Wyse, against the Liverpool & London & Globe Insurance Company, upon two fire insurance policies, aggregating the sum of $3,500. The plaintiffs alleged the issuance of the policies, the value of the property insured, its destruction by fire, the liability of the defendant in consequence thereof, and that "copies of said policies are hereto annexed and made a part hereof, and marked Exhibits 'A' and 'B'," all of the conditions of which have been fully complied with by plaintiffs. The defendant, in its answer, denied liability because of the alleged failure of the plaintiffs to comply with the provisions of the policy in reference to the proof of loss, and because of the failure of the plaintiffs to comply with the provisions of the "iron-safe clause" of the policy, which is fully set out in the assignments of error. A trial resulted in a judgment for the plaintiffs for the amount sued for, with interest and costs of

suit. A motion for a uew trial, filed in due time, was overruled; and from the action of the court in rendering judgment against the company, and in overruling defendant's motion for a new trial, an appeal has been prosecuted to this court.

*A. B. Quinton, E. S. Quinton, W. A. Ledbetter,* and *S. T. Bledsoe,* for appellants.

1. The court should have directed a verdict for defendant. The policy sued on contained an "iron safe clause," which required plaintiffs to "keep a set of books showing a complete record of the business transacted, including all purchases and sales, both for cash and on credit." Before plaintiffs can recover, they must show a compliance with this provision, or show a waiver. No waiver is alleged in the complaint. Plaintiffs have wholly failed to show a compliance with the conditions of the policy. Pelican Ins. Co. vs Wilkinson, 53 Ark. 352. The object on the part of the Insurance Company was to require plaintiff to keep a set of books as would enable defendant with reasonable accuracy to determine the value of the goods destroyed. If they failed to do this, they could not recover. Browne vs Palatine Jns. Co., 35 S. W. 1060. If a record of the cash sales is omitted the inventory and record of the credit sales will be useless. Ostrander on Fire Insurance (2nd Ed.) 553.

2. The agreement to produce the inventory in case of loss by fire was a promissory warranty and a condition which the plaintiff must comply with before any liability attaches to the Insurance company. Southern Ins. Co. vs Parker, 61 Ark. 207; Germania Ins. Co. vs Bramwell, 63 Ark. 43; Landman vs Ins. Co., 18 Ins. Law Jour. 813; Kelley-Goodfellow Shoe Co. vs Liability Ins. Co., 28 S. W. 1027; American Fire Ins. Co. vs First Nat. Bank, 30 S. W, 380; Ins. Co. vs Carey, 31 S. W. 321; Western Ins. Co. vs Altheimer, 24 S. W. 1067; Wood on Ins. §§ 179, 449; May on

Ins. § 157; Angell on Ins. 140; Ellis on Ins. 28; 1 Arn. on Ins. 213; 3 Kent Com. (12th Ed.) 289; Wood vs Ins. Co. 13 Conn. 533; 1 Wood on Ins. 436.

3. The court erred in instructing the jury that if plaintiffs complied substantially with the policy, they could recover. Ins. Co. vs Kemptner, 27 S. W. 122; Imperial Ins. Co. vs Coos, 151 U. S. 452; Ostrander on Ins. (2nd Ed.) 655, 656.

W. B. Johnson, A. C. Cruce and Lee Cruce, for appellees.

The failure to comply with the provision of the "Iron Safe Clause" did not work a forfeiture. Delaney vs Rockingham Mut. Fire Ins. Co., 52 N. H. 581; May on Ins. 213; Phoenix Ins. Co. vs Angel, 28 S. W. 1067; Ostrander on Ins. (2nd Ed.) § 303; 25 S. W. 720; Western Assurance Co. vs Redding, 68 Fed. 708.

SPRINGER, C. J. In addition to the assignments of error in this case, the appellees contend that the bill of exceptions in this case was not filed in court within the time required by law. The case was tried in the court below on the 23d day of September, 1895. Motion for new trial was overruled, and 60 days' time was allowed within which to prepare and file bill of exceptions. By two separate agreements, signed by attorneys for both parties, the time for preparing and filing the bill of exceptions was extended until the 19th day of January, 1896. On December 28, 1895, the attorney for the appellant received the bill of exceptions from the court stenographer. On January 13, 1896, the attorney for the appellant appeared at Ardmore to present his bill of exceptions to Judge Kilgore, but he was not there at that time, being in attendance upon the United States Court of Appeals for the Indian Territory at South McAlester. The attorney started immediately for South McAlester, and on arriving

there learned that Judge Kilgore had, on the day before his arrival, departed for the city of Washington, where he was called upon public business. The attorney thereupon sent the bill of exceptions by express to Judge Kilgore at Washington, where the same was received on January 18th, the day before the time for signing the same expired. Judge Kilgore declined to sign the bill of exceptions upon the ground that it did not contain a true record of the case, and for the further reason that it had never been presented to the attorneys for the appellees. An application was made to the United States Court of Appeals for the Indian Territory for a writ of mandamus to compel Judge Kilgore to sign the bill of exceptions in this case. The court refused to grant the writ of mandamus, for the reason that Judge Kilgore, in his response to said writ, stated that, at the time the bill of exceptions was presented to him, he had no means of examining the official report for the purpose of correcting the bill of exceptions, and he refused to sign the purported bill of exceptions presented to him for the reason that it was incorrect. He further stated that no other or different bill of exceptions was ever presented to him for his signature; and, further, that he was willing to sign a correct bill of exceptions in the case, and would have signed the same had a correct one been presented to him within the time fixed by the court, but that, in his judgment, he had lost jurisdiction of the matter after the 18th day of January, 1896.

There can be no question but that, had Judge Kilgore remained in the Indian Territory, there would have been ample time to have corrected the bill of exceptions and to have signed it within the time fixed by the court. It was unfortunate for the appellant that the judge was compelled to leave the territory before signing the bill of exceptions, but laches ought not be imputed to it on this account. In the case of People vs Van Buren Circuit Judge, 41. Mich.

725, 49 N. W. 924, the Supreme Court of that state, of which Judge Cooley was then a member, said: "The party who prepared the bill of exceptions, having done all in his power to comply with the various orders made for its settlement, and having completed and furnished his bill in due time for that purpose, he cannot lawfully be deprived of his right to have it settled and signed by any failure of the judge or of the opposing party to have it regularly completed at the time appointed." See, also, People vs Littlejohn, 11 Mich. 60. And in another case the same court held: "Although there was a great delay in settling the bill of exceptions, it appears to have been from the inaction of the judge and not from the fault of the party. The case, therefore, cannot be distinguished from other cases before decided, where parties have been deprived of their exceptions by circumstances beyond their control." People vs VanBuren Circuit Judge, 41 Mich. 725, 49 N. W. 924. The same court also held : " Where parties have prepared their bill of exceptions and presented it in season to the judge, they are not responsible for subsequent delays for which they are in no wise at fault, and the bill of exceptions will not be stricken out under such circumstances. In the present case, the plaintiffs in error were prompt, and the delays were on the other side." City of Detroit vs Blackeby, 20 Mich. 220. In Elliott, App. Proc. § 802, the rule is stated as follows : " If the bill is presented to the judge in the prescribed time, and he fails to sign it, the party does not thereby lose his right to have the bill signed and filed." Also Creamer vs Sirp, 91 Ind. 366; Hamm vs Romine, 98 Ind. 77; Robinson vs Anderson, 106 Ind. 152, 6 N. E. 12. In 3 Enc. Pl. & Prac. 474, the rule is said to be: " When the exceptant seasonably tenders the bill, it is not invalidated by the failure of the judge to sign until after the expiration of the time required by law, as it is the fault of the judge, and not of the appellant. " Other authorities on this point might be cited, but we deem it unnecessary.

· This court, on April 2, 1898, in the case of Young vs U. S., 1 Ind. Ter. 556, held that a bill of exceptions which was signed by the judge in vacation within the time allowed by order thereof, but was not filed with the clerk until after the expiration of such time, and in vacation, became no part of the record. This court does not now modify the rule laid down in that case, that being the general rule in cases of this kind. But the question was not raised in that case, nor could it have been under the facts, that the delay was not the fault of the appellant. Where the appellant has performed his duty as required by law and by order of court, he ought not to suffer by reason of any failure of the judge to approve the bill in time. In the case at bar the failure to sign the bill in time was no fault of the judge, for he was called to Washington on official business; but his failure to do so was not the fault of the appellant, and was due to a circumstance over which it had no control. We are of the opinion, therefore, that the bill of exceptions in this case should be regarded as having been filed in time.

The assignments of error by the appellant requiring consideration by this court are limited to two:

1.    That the court below erred in permitting the plaintiffs (appellees in this court) to testify as to the value of the goods, wares, and merchandise alleged to have been destroyed by the fire; that the plaintiffs had taken an inventory of the goods, wares, and merchandise, but had lost the same; and in permitting the witnesses to testify what the inventory showed the goods to be worth on the 1st day of January, 1894. The testimony in this case discloses the fact that a disastrous fire occurred in the town of Ardmore in the year 1895, and that the appellees in this case, who were merchants doing business in that town, when they saw the fire approaching their building, and that its destruction was inevitable, undertook to remove the books of the firm, which

were kept in an iron safe, to the residence of one of the appellees, believing that they would be in a place of greater safety at the residence, which was not in the path of the fire, than if left in the safe. The parties did undertake to remove their books. There were quite a number of them, and, in the hurry and confusion which ensued, one of the books was lost and destroyed in the fire. This was the book containing the last inventory of stock which had been prepared by the appellees. Having shown by the testimony of appellees that they had lost these books, they were permitted to show by oral evidence their contents. The court of chancery appeals of Tennessee, in the case of McNutt vs Insurance Co. (decided Oct. 31, 1897) 45 S. W. 61, held that the appellant in that case proving, as he did, satisfactorily, the contents or result of the inventory, would, in effect, be a production of it, and its accidental loss could thus be obviated, and its contents proved by oral testimony, and this would, in effect, be a production of the inventory. The court, therefore, did not err in permitting the appellees, after having proven the loss of the inventory, to prove its contents by oral evidence.

2.    The appellant further assigns as error in this case the following instruction, which was given by the court : "Now, if they [plaintiffs] had been guilty of negligence in the discharge of their duty,—in the discharge of the obligations imposed by policy,—they would not be entitled to recover, and that is a question you must pass upon. It is contended by the plaintiffs that, when the fire was on,—a great fire, sweeping a whole town out of existence,—in order to protect their records and books in accord with the obligations which this policy imposed upon them, they opened the safe, and took from it all the books relating to the business. If it was in the safe, and in taking it out it was lost in the excitement and destroyed, you are instructed that the loss or destruction of that book, and the failure to produce it, would not, in itself, defeat the recovery. If there was a fraud per-

petrated in its loss or destruction, or the parties were guilty of any negligence, or a sufficient want of care, under the circumstances, when the book was lost, that would be sufficient to defeat a recovery; but if they acted in good faith, with the use of diligence and care that business men usually employ, the loss of that book, under the circumstances, would not defeat a recovery, and they would be entitled to recover." Appellant also assigned as error the following instruction, which was given by the court: "Now, if the plaintiffs kept such books and inventory locked in a fireproof safe on the night that the goods were destroyed by fire, and the plaintiffs, for the purpose of better protecting said books and inventory, attempted to remove them to some other secure place not exposed to a fire that would have destroyed the house in which the business was carried on, and in such effort any part of the books were destroyed, plaintiffs were acting within the scope of authority granted them by the iron-safe clause of said policy."

These instructions properly submitted to the jury the issues in the case. The iron-safe clause which was contained in the policy of insurance sued on is in the usual form in such cases, and by the terms of which the insured covenanted and agreed to keep a set of books "showing a complete record of the business transacted, including the purchases and sales, both for cash and on credit, together with the last inventory of said business, and to keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house in which the said business is carried on." It was further agreed that, in case of loss, the insured would produce such books and inventory, and, in the event of failure to do so, the policy would be null and void, and no suit or action at law should be maintained thereon for any such loss. Counsel for appel-

lant requested the court to instruct the jury that this clause of the policy "is a warranty on the part of the assured, and his failure to meet the requirements of such warranty in any particular forfeits the policy; and the failure of the assured to produce, in case of loss, the inventory, as required by such warranty, would defeat plaintiffs' right to recover, and said policy would be null and void." The court properly refused this instruction, and, as we think, properly stated the law to be as presented by the court in the instructions above quoted.

It is conceded by counsel in this case that the decisions of the courts are conflicting in reference to the effect to be given to what is known as the "iron-safe clause" in modern insurance policies. This court is of the opinion that a strict compliance with the conditions of the iron-safe clause is not required; but if there is a substantial compliance with these covenants the assured will be entitled to recover. Brown vs Insurance Co. (Tex. Sup.) 35 S. W. 1060. In the case of Assurance Co. vs Redding, 15 C. C. A. 619, 68 Fed. 708, McCormack, circuit judge, speaking for the court, said: "Viewed as a set of books from the standpoint of an expert in that scientific system of bookkeeping which obtains in the business of an insurance company which has pushed its business, at least, from the chief city of Canada to the obscure hamlet of Greenville, Fla., these books in evidence are primitive to a degree that may test his temper, if not his skill; but to impartial jurors, patiently searching for proof to support a recovery on a contract of indemnity for a loss insured against, and incurred without fraud or fault on the part of the insured, these books tell a plainer story than the expert, unconsciously or strenuously looking to them for ground of forfeiture, was able to read in them. To our view, the very imperfections of these books vouch their good faith. It is insisted that the accounts of goods purchased should have set out the specific articles and the value

of each, and that the account of cash sales should have been equally particular as to articles sold and the price; for it is argued the insured may have sold goods at one-tenth of their cost price, for aught that appears in these entries. of cash sales. If these accounts were to have been thus kept,— thus itemized,—why not have said so? There was time and space in the clause in question to provide expressly that the inventory of stock to be taken at least once every year should be itemized. If the accounts of purchases and sales were to be so itemized, why take stock at all?" This opinion by Judge McCormack is applicable to the contentions of appellant in this case, and as we think clearly states the rule which should govern. In the case of McNutt vs Insurance Co., supra, Judge Barton, speaking for the court of chancery appeals of Tennessee in that case, said: "Did the agent of the insurer suppose that this would be done; that the contract was understood to be that there was to be absolutely no mistake; and that the books should show, with absolute and scientific correctness, the whole truth, and nothing but the truth, and that without any explanation, in regard to every single transaction that occurred during the pendency of the policy? Such supposition would be absurd. It is a matter of universal information, of which we may take judicial knowledge, that, as a rule, books are not kept, in the country stores in this state, up to any such state of excellence. And for the defendant company to issue policies and receive premiums, understanding that these policies were capable of such construction, would, with the knowledge which they must have of business prevailing among their patrons, be obtaining money fraudulently. As was said by Judge McCormack, common honesty and common sense are safe guides in the construction of even these wonderfully devised contracts, and the courts should and do and will apply to these the doctrines that obtain in adjudging forfeitures, because they can be nothing more. They are conditions

subsequent on which a forfeiture is sought." And, further, in the same opinion, the court of chancery appeals of Tennessee hold: "We think, on well-settled principles, and in accordance with the spirit of the entire line of our own cases, in construing these exacting provisions of insurance policies, which are so little understood by the patrons of insurance companies, that as to this particular clause, as well as those above considered, the rule of construction should be honesty, good faith, and good common sense. And as they are solely conditioned subsequent, on which a forfeiture is sought, they should be construed strictly against the right of forfeiture. And we, therefore, hold that, the proof showing, as we find, that the complainant had endeavored in good faith to comply with all the terms and conditions of his policy, and that he kept his books in good faith, and that he supplied all the deficiencies by obtaining duplicate invoices, and showing beyond question the status of his inventory, and kept it in the safe, but because he had been engaged, on the evening previous to the fire, he accidentally omitted to place the book within his safe, its accidental loss will not preclude him from a recovery."

There are other errors assigned in this case which we do not deem it necessary to consider. The principal contentions are embraced in the assignments, to which reference has been made. We are of the opinion that there is no reversible error in the record, and that the insured in this case, under all the facts and circumstances, were entitled to recover the amount of their demand. The facts were fairly submitted to the jury, and were found in their favor. One feature worthy of notice in this case is that there is no intimation in the record that the insured acted otherwise than in good faith. Their integrity and their honest endeavors to comply with the terms of the policy undoubtedly had their proper weight with the jury in determining the questions of fact in the case. The judgment of the court below is affirmed.

CLAYTON, THOMAS, and TOWNSEND, JJ., concur.