## N. BROWN v. PALATINE INSURANCE COMPANY.

### No. 420.—Decided May 25, 1896.

**1. Insurance—Contract.**

In the construction of policies of insurance the same rules of law will be applied as in the case of other contracts and no greater strictness required in their performance. (P. 594.)

**2. Same—Rules of Construction.**

To determine the intention of parties to a contract of insurance its construction must be governed by the following rules:

(1) The language, being selected and used by the insurer to express the terms and conditions upon which it issued the policy, will be strictly construed against

it and liberally in favor of the insured. If the words admit of two constructions that one will be adopted most favorable to the insured.

(2) The language used must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto.

(3) Forfeitures are not favored by the law and if the language used is fairly susceptible of an interpretation which will prevent a forfeiture it will be so construed. (P. 595.)

### 3.    Same—Warranty—Production of Books—Fire-proof Safe.

A policy of fire insurance provided that the insured "covenants and warrants to keep a set of books showing a record of business transacted, including all purchases and sales * * * and to keep such books * * * securely locked in a fire-proof safe at night;" and that "In the event of a failure to produce the same this policy shall be deemed null and void and no suit or action at law shall be maintained thereon for such loss." Books were so kept and produced except as to the sales of the day preceding the fire which were, as was customary, entered by the clerks on a small book or "blotter" to be transferred to more substantial books. The blotters were left out of the safe, destroyed by the fire, and the sales for that day not entered upon the journal. Held:

(1) It will not be presumed that the parties intended to prescribe that which was practically impossible, such as absolute accuracy in the keeping of books. A substantial compliance would suffice in such case and the contract be construed as requiring no more than could be reasonably expected of the insured.

(2) The purpose of such warranty will be considered in construing the language and determining whether its intent and meaning had been complied with in keeping the books.

(3) Books so kept as to enable the insurer with reasonable certainty to arrive at the amount of loss should be held a compliance with the contract.

(4) Whether the books so kept and produced by insured were a substantial compliance with the warranty being a question of fact determined in the affirmative by the trial court, the Court of Civil Appeals, not finding the facts otherwise, improperly held that the failure to enter the sales of the last day upon the books worked a forfeiture as matter of law. (Pp. 595-597.)

ERROR to Court of Civil Appeals for Fourth District, upon a writ of error to Ellis County.

Plaintiff in error, N. Brown, brought this suit against the Palatine Ins. Co. in the District Court of Ellis County, to recover upon a policy of insurance upon his stock of goods which had been destroyed by fire. The policy contained the clause, copied in the opinion of the court, commonly known as the "iron safe" clause, and a failure to comply therewith was urged as a defense. The case was tried by the court without a jury and the following findings of fact made by the court, bearing on this issue, and adopted by the Court of Civil Appeals as its findings of fact in the case:

"The plaintiff kept a set of books in his business covered by said policy of insurance. (1). He kept blotters of original entry, in which were entered, at the time such transactions occurred, all credit sales of merchandise made in the business covered by the policy of insurance. (2). A cash book in which was entered at the end of each day the total cash sales made in the business covered by the policy of insurance, for that day. (3). A journal to which was daily transferred the credit sales from the blotters. (4). A ledger in which was posted the entries of the cash book

and entries of the journal, except that the sales for the last day preceding the fire entered on such blotters were not transferred to the journal.

"The plaintiff kept the last inventory of his stock, taken January 15, 1893, and his ledger and his journal and his cash book locked in a fire-proof safe at night as required by the terms of said iron safe clause; and said books contained a complete record of his business transacted, including all purchases and sales, both for cash and on credit, except the sales on credit for the 19th day of December, A. D. 1893, the day preceding the fire, which latter sales had not been transcribed from the blotters to the journal.

"The plaintiff did not keep securely locked in a fire-proof safe, at night and at all times when said store was not actually open for business, his blotters containing the original entries of the credit sales made in his business. That the blotters were used on the counter for daily credit sales, and six or eight were required for the year's business, but only one at a time.

"The blotters covering all credit sales from the date of the inventory, in January, A. D. 1893, to the time of the fire having been left out of the safe and on top thereof were destroyed by the fire which destroyed the insured property.

"The books as preserved through the fire and presented to the insurance companies, and presented in evidence before the court, did not contain the credit sales for the last day's business preceding the fire, to-wit: December 19, 1893, but did contain a record of all the other sales made by the plaintiff, and contained a record of all purchases made by him in his business.

"The plaintiff's credit sales in his business covered by the policy of insurance, as shown by the books saved, for the days preceding the fire, were as follows: December 18, 1893, $65; December 16, 1893, $70; December 15, 1893, $76."

The District Court filed the following conclusions of law:

"1. The iron safe clause constituted a part of the contract and is a warranty.

"2. The plaintiff kept his books in strict compliance with the said clause, and as to the mode of keeping them complied substantially with the said clause."

Plaintiff recovered judgment for the amount of his policy and the defendant company carried the case to the Court of Civil Appeals by writ of error.

That court reversed the judgment of the court below and rendered judgment for plaintiff in error, the insurance company, holding that the clause in question was a promissory warranty; that its language was plain and the words to be regarded as those of the promissor; and that it was a vital part of the contract and must be strictly complied with, regardless of its materiality or connection with the loss.

Upon this judgment Brown, the plaintiff below, obtained a writ of error from the Supreme Court upon the alleged ground that the decision

upon the effect of this clause of the contract was erroneous in law and in conflict with a decision of the Court of Civil Appeals of the Fifth District and with previous decisions of the Supreme Court.

No brief for plaintiff in error in Supreme Court, but *M. B. Templeton* and *Crawford & Crawford* filed in support of his position, on motion for rehearing, in the Court of Civil Appeals, an extended brief and argument, citing and discussing the following authorities: Turley v. Ins. Co., 25 Wend., 377; May on Insurance, secs. 166, 174, 178, 156, 217; Hill v. Still, 19 Texas, 84; Edwards v. Atkinson, 14 Texas, 376; McCluer v. Ins. Co., 43 Ia., 349; Patterson v. Ins. Co., 24 Ia., 498; Hoffman v. Ins. Co., 32 N. Y., 412; Mears v. Ins. Co., 92 Pa. St., 15, 37 Am. Rep., 647.; Van Volkenburg v. Ins. Co., 70 N. Y., 607; Ins. Co. v. Foley, 105 U. S., 350; Ins. Co. v. Fred, 32 S. W. Rep., 245; Kelly, etc., Shoe Co. v. Ins. Co., 28 S. W. Rep., 1031; Copp v. Ins. Co., 51 Wis., 640; Williams v. Railway, 82 Texas, 455; Ins. Co. v. Dyches, 56 Texas, 566; Ins. Co. v. Parker, 32 S. W. Rep., 508; Bell v. Railway, 4 Smedes & M., 549; Crocker v. Ins. Co., 8 Cush., 79; Ins. Co. v. Willock, 29 S. W. Rep., 219; Ins. Co. v. Redding, 68 Fed. Rep., 708; Cox v. Ins. Co., 29 Ind., 592; Ins. Co. v. Crunk, 91 Tenn., 374; Ins. Co. v. Garlington, 66 Texas, 103; Ins. Co. v. Hughes, 10 Lea, Tenn., 462; Pass v. Ins. Co., 7 Id., 704; 1 Wood on Ins., 415, 182; Titus v. Ins. Co., 81 N. Y., 414; Kircher v. Ins. Co., 74 Wis., 470; Foot v. Ins. Co., 61 N. Y., 575; Chaffee v. Ins. Co., 18 N. Y., 378; Martin v. Ins. Co., 43 Am. Rep., 401; Mickey v. Ins. Co., 35 Iowa, 176; Ins. Co. v. Eddy,, 50 Ill., 106; Dwight v. Ins. Co., 103 N. Y., 349; Ins. Co., v. Coos Co., 151 U. S., 452; Ins. Co. v. Kempner, 87 Texas, 229; Bills v. Ins. Co., 87 Texas, 552; Lynch v. Elevator Co., 80 Texas, 36.

*Morgan & Thompson,* for defendant in error.—

The "iron safe" clause is a promissory warranty. Kelly Shoe Co. v. Liberty, 29 S. W. Rep., 21 s. c. 28 S. W. Rep., 1030; Am. Fire Ins. Co. v. Bank, 30 S. W. Rep., 384; Ins. Co. v. Cary, 31 S. W. Rep., 321; Ins. Co. v. Center, 33 S. W. Rep., 554; Ins. Co. v. Mize, 34 S. W. Rep., 671; Ins. Co. v. Watters, 30 S. W. Rep., 576; Ins. Co. v. Altheimer, 25 S. W. Rep., 1069; Ins. Co. v. Parker, 32 S. W. Rep., 507 (Ark.); Crigler v. Ins. Co. 49 Mo. Ap., 11; Goldman v. Ins. Co. 19 So. Rep., 133.

A strict compliance with its terms is necessary to entitle the insured to recover. Authorities same as under preceding, and May on Ins., secs. 156, 183, and cases cited; Biddle on Ins., secs. 532, 543, 557, and cases cited; Richards, sec. 52, and cases cited; Ostrander, sec. 136; Wood on Ins., sec. 179; Beach on Ins., sec. 459; Bliss, sec. 34; Kempner v. Ins. Co., 87 Texas, 236; Ins. Co. v. Hazelwood, 75 Texas, 338; Ins. Co. v. Camp, 64 Texas, 521; 71 Texas, 503; Campbell v. Ins. Co., 98 Mass., 390; Jeffries v. Ins. Co., 22 Wall.,·53; Ins. Co. v. France, 91 U. S., 512; Ins. Co. v. Fletcher, 117 U. S., 519; Ripley v. Ins. Co. 30 N. Y. 136; Bank v. Ins. Co., 50 N. Y, 48; Ins. Co. v. Coos, 151 U. S., 461.

Courts of law will not and should not extend the liability or risk of

an insurance company beyond what is clearly written in the policy, and will not and should not make for the parties or either of them a contract other or different from the one they have made for themselves. Nat. Bank v. Ins. Co., 62 Texas, 461; Ins. Co. v. Long, 51 Texas, 89; Rann v. Ins. Co., 59 N. Y., 387; Stephenson v. Ins. Co., 83 Ky., 7.

BROWN, ASSOCIATE JUSTICE.—The Palatine Insurance Company, of Manchester, England, issued to N. Brown on his stock of goods an insurance policy for the sum of $1,500, which contained the following condition: "The insured under this policy covenants and warrants to keep a set of books showing a record of business transacted, including all purchases and sales both for cash and credit, together with the last inventory of the stock insured, and further covenants and warrants to keep such books and inventory securely locked in a fire-proof safe at night and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where such business is carried on; and in case of loss the assured warrants and covenants to produce such books and inventory, and in the event of a failure to produce the same this policy shall be deemed null and void and no suit or action at law shall be maintained thereon for such loss."

The defendant Insurance Co. plead that plaintiff had failed to keep and produce the set of books required by the terms of the policy, whereby the policy was forfeited.

Plaintiff kept and produced a set of books which were in compliance with the requirements of the policy, except that the sales for the day on which the fire occurred were entered by the clerks on small books known as blotters, as usual, which it was customary to transfer to books of more substantial character, but the blotters for that day were left out of the safe and destroyed by the fire and the sales had not been entered upon the journal. The books showed the sales on credit for the three preceding days to have been respectively $65, $70 and $76. The fire occurred without fault on the part of plaintiff and he had on hand at the time goods to an amount sufficient to entitle him to recover the amount of the judgment of the District Court if the policy was not forfeited. Trial was had below before the judge, who found that the books kept by plaintiff complied with the requirements of the policy, and gave judgment for plaintiff for $1,353.12, which was reversed by the Court of Civil Appeals and judgment rendered in favor of defendant.

In the construction of policies of insurance, the same rules of law will be applied as in the construction of contracts made between individuals under like conditions, and no greater strictness is required in the performance of the one than the other. Hoose v. Ins. Co., 84 Michigan, 317; Ins. Co. v. Cherry, 84 Virginia, 75. It is often said that a warranty in an insurance policy must be strictly complied with, and sometimes it is said that it must be literally fulfilled, but this is no more true of that character of contract than of others, and means no more than that, when the language is clear, it must be performed as expressed,

which is equally true of all kinds of written undertakings. The same is true of such instrument when the language calls for construction; for, when the meaning and intent is arrived at, whether it be explicitly expressed in the words or derived from them and attending circumstances, that intention must govern in enforcing the contract. Goddard v. Ins. Co., 67 Texas, 71. It is, however, unnecessary for us to discuss the question as to whether the compliance must be strict or may be substantial, for, in the case now before us, the real question is, what did the parties intend to prescribe as the measure of duty on the part of the insured in keeping the books? Did the insured undertake to keep a set of books absolutely correct by the entry of every business transaction and of the sale of each article of merchandise? It is not so written in the policy and can only be claimed as the intention of the parties to be ascertained from a construction of the language used. Since the language calls for construction to determine what the parties intended, that construction must be governed by the following familiar rules of law:

First: The language, being selected and used by the insurer to express the terms and conditions upon which it issued the policy, will be strictly construed against it, and liberally in favor of the insured. If the words admit of two constructions, that one will be adopted most favorable to the insured. Wood on Fire Ins., sec. 60; Bills v. Ins. Co., 87 Texas, 551; Goddard v. Ins. Co., 67 Texas, 71; Ins. Co. v. Hazelwood, 75 Texas, 347.

Second: The language used must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto. Wood on Fire Ins., secs. 182-187; Whitney v. Ins. Co., 72 N. Y., 117.

Third: Forfeitures are not favored by the law, and, if the language used is fairly susceptible of an interpretation which will prevent a forfeiture, it will be so construed. 1 Wood Fire Ins., sec. 181, p. 436.

The subject to which this warranty relates is the keeping of a set of books in a mercantile business, in which the sales were to be made and recorded by a number of clerks, and, when so made, to be transferred by other employes. In other words, it was a business to be transacted for the insured by employes. It is a matter of common knowledge that absolute accuracy in such business is unattainable, and it would be perhaps an impossible thing to find a set of books which would show the transactions of such business with the accuracy claimed by the Insurance Company. These things must have been in contemplation of the parties when the contract was made, and it will not be presumed that the parties intended to prescribe that which was practically impossible. A substantial performance of the contract would suffice in such case; that is, the contract is to be construed as including no more than could be reasonably expected of the insurers. Wood, Fire Ins., secs. 187-188-189.

The purpose for introducing the warranty into the policy should also

be considered in construing its language and in determining whether or not the intent and meaning of the language had been complied with in the manner of keeping the books. The evident object on the part of the Insurance Company was to require of the insured to preserve such evidence as would enable it, with reasonable certainty, to arrive at the amount of loss in case the property should be destroyed by fire and it should be called upon to perform its contract of insurance, and thereby to guard itself against fraudulent and wrongful claims. If the books kept and produced by the insured served the purpose in view, it should be held a compliance with the contract. Considering the language used, the character of the business, and the purposes to be served, we think that the insured had a right to understand that he was to use that care which a prudent man, engaged in like business, would use in keeping the set of books required by the warranty, and that he should keep such a record of his business as would reasonably afford the insurer evidence of the condition of that business and the amount of the loss sustained by him. If the contention of the Insurance Company be sustained, it will lead to the result, that, if in the course of the business the clerks of the insured should omit the entry of a single sale, whether for cash or credit, during the time of the continuance of the policy, this omission would work an absolute forfeiture of the insurance. We do not think that a contract with reference to such a subject should be construed with that strictness and, under the general rules, well established, that forfeitures are not favored and that the language employed will be so construed as to sustain the contract rather than to destroy it, we feel constrained to hold that the contract in this case did not mean and was not intended to mean that, by any slight and trivial error in keeping the books of the business, the insured should suffer a forfeiture and the insurer be free from liability upon its contract.

Whether Brown complied with the warranty, that is, did those things which by the true intent and meaning of the contract he undertook to do, was a question of fact, and the judge before whom the case was tried without a jury found, as a fact, that he had complied with the terms of his contract. The Court of Civil Appeals did not find the facts to be different from those found by the trial court, but held, as a matter of law, that the omission to enter the sales of one day upon the books of the business worked a forfeiture of the contract, and upon this legal conclusion reversed the judgment of the District Court and rendered judgment for the Insurance Company. Unless it can be said, which we think it cannot, that the language of the contract absolutely required that every sale should be entered, it cannot be held as a matter of law that the failure to enter the sales of one day works a forfeiture of the contract. It appears from the findings of fact by the trial court that the condition of the books was such that the insurer could ascertain therefrom, with reasonable certainty, what the loss was that it was called upon to meet. The books showed the sales for each day preceding the fire, and especially for the few days preceding, and it could well be pre-

sumed that the sales were practically the same as upon the days imme-
diately preceding the fire.   The purpose, then, for which the warranty
was made was fully subserved by the construction that we place upon it,
and the rights of the Insurance Company were fully protected and
guarded by the rules laid down.   It might be the case that the sales of
one day might be so heavy, so unusual, that a jury or a court would find
that the failure to enter them was a failure to comply with the true
meaning of the contract, but the facts before us do not justify any such
conclusion.

   We therefore hold that the Court of Civil Appeals erred in reversing
the judgment of the District Court and in rendering judgment for the
Insurance Company, and therefore reverse the judgment of the Court of
Civil Appeals and affirm the judgment of the District Court.

> *Judgment of Court of Civil Appeals reversed.*
> *Judgment of District Court affirmed.*