ÆTNA LIFE INS. CO. v. EL PASO ELECTRIC RY. CO. (No. 526.)*

(Court of Civil Appeals of Texas. El Paso. March 10, 1916. Rehearing Denied March 30, 1916.)

1. INSURANCE ⬅️435—CASUALTY INSURANCE —CONSTRUCTION OF CONTRACT—RISK.

Under an employer's liability policy issued to an engineering corporation and to plaintiff electric railway company, including under a de-

scription of the business "track and overhead construction work, including the operation of work cars," where an employé, while engaged in repair work for the engineering company under an agreement between the two companies, was injured when a tower car, standing on or near the street car tracks, was run into by a street car as the result of the motorman's negligence, and had recovered of the street railway on the theory that he was its employé at the time of his injury, the loss sustained by the injury was within the terms of the policy; as the risk was not limited to injury "by reason of" overhead construction work, but extended to perils necessarily incident to such work.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. ☜435.]

**2. INSURANCE ☜146(3) — CONSTRUCTION OF CONTRACT.**

A contract of insurance will be construed strictly against the insurer and liberally in favor of the insured, and, if the words admit of two constructions, the one most favorable to the insured will be adopted.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295; Dec. Dig. ☜146(3).]

**3. INSURANCE ☜435—EMPLOYER'S LIABILITY INSURANCE—CONSTRUCTION.**

Under a provision in an employer's liability policy issued to a street railway and to an engineering company, providing that claims arising by reason of injury to or the death of persons whose compensation is excluded were not covered, it was immaterial whether an injured employé was in the employ of the railway or the engineering company at the time of his injury, and that the compensation of the negligent motorman was not included in the policy, as the clause is not limited to cases in which injury is caused "by" persons included in the policy, but covers injury "to" such persons.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. ☜435.]

**4. INSURANCE ☜640(1)—DEFENSES—PLEADING.**

In such case, any defense available under such provision was an affirmative defense which it was necessary to plead.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1554, 1609–1612, 1614, 1616, 1622–1624; Dec. Dig. ☜640(1).]

**5. INSURANCE ☜598—AMOUNT OF RECOVERY —INTEREST.**

Under an employer's liability policy, not providing for the payment of interest, the insured, recovering for a loss sustained by payment of a judgment for an injury to its employé, was entitled to interest on its judgment from the date of the employé's judgment against it, rather than from the date of its payment thereof.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1494; Dec. Dig. ☜598.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by the El Paso Electric Railway Company against the Ætna Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Beall & Kemp and C. W. Croom, all of El Paso, for appellant. Baker, Botts, Parker & Garwood, of Houston, and Davis & Goggin, of El Paso, for appellee.

HIGGINS, J. Appellant issued an "employer's liability policy" of insurance, where-

by, with certain exceptions not necessary here to mention, it agreed—

"to indemnify the assured described in the warranties hereof, within the amounts so expressed herein, against loss and/or expense arising or resulting from claims upon the assured for damages on account of bodily injuries and/or death accidentally suffered, or alleged to have been suffered, by an employé or employés of the assured as provided in said warranties, by reason of the business as described and conducted at the location named therein, whether said injuries and/or death are accidentally suffered, or alleged to have been suffered, at the locations named or elsewhere."

Warranties 1 and 4 read:

"1. Name of assured: Stone & Webster Engineering Corp. or El Paso Electric Railway Co."

"4. Classified description of the business: All operations incidental to the following business, in and during the continuance hereof. Track and overhead construction work including the operation of work cars."

The policy also contains these provisions:

"It is hereby understood and agreed that from noon, October 5, 1909, this policy, subject to its terms, conditions and agreements, covers the interests of the Stone & Webster Engineering Corporation and or El Paso Electric Railway Company and Petrolithic and Construction Company and El Paso & Juarez Traction Company.

"Upon the occurrence of an accident covered by this policy the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company or its duly authorized agent. If a claim is made on account of such accident the assured shall give like notice thereof in full particulars. The assured shall at all times render to the company all co-operation and assistance in his power.

"If suit is brought against the assured to enforce a claim for damages covered by this policy, he shall immediately forward to the company every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on behalf of the assured.

"The assured, whenever requested by the company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at his own cost, without the written consent of the company previously given, except that the assured may provide at the company's expense such immediate surgical relief as is imperative at the time of the accident.

"N. The company's liability for loss on account of an accident resulting in bodily injuries to or in the death of one person is limited to ten thousand ($10,000.00) dollars, and, subject to the same limit for each person, the company's total liability for loss on account of any one accident resulting in bodily injuries to or in the death of more than one person is limited to twenty thousand ($20,000.00) dollars. The company, will, however, as provided in conditions 'D' and 'E' hereof, pay the expense of litigation in addition to the sum herein limited, provided that if the company shall elect to pay the assured the sum as herein limited, it shall not be liable for further expense of litigation after such payment shall have been made.

"D. No action shall lie against the company to recover for any loss and/or expense under this policy unless it shall be brought by the as-

sured for loss and/or expense actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within two years after payment of such loss and/or expense."

During the life of the policy, one Shaklee and a fellow workman named Judia, while engaged in overhead construction work upon appellees' electric railway line in the city of El Paso, sustained severe bodily injuries. Shaklee filed suit against appellee to recover damages resulting from such injuries. A judgment in his favor was rendered on September 26, 1910, in sum of $12,500, which, upon appeal, was affirmed. On November 6, 1911, appellee paid the sum of $13,345 in settlement of the principal and interest due on such judgment, and the further sum of $72.-35 costs of court. Appellant, having failed to indemnify appellee for any loss and expense incurred incident to the injuries sustained by Shaklee, filed this suit to recover upon aforementioned policy of insurance.

Under the view which we have of this case, it becomes unnecessary to discuss in detail appellant's assignments, and for the same reason it is unnecessary to in detail state the issues raised by the pleadings and findings of the jury upon the special issues submitted to them. The facts, only, will be stated pertinent to what is considered to be the controlling issue in the case.

The evidence shows that, upon the happening of the accident, written notice was immediately given the insurance company of the accident, with all the information obtainable at the time, and, upon the filing of the suit by Shaklee, the street railway company gave notice of that fact with full particulars, sending the citation to the representatives of the insurance company as soon as the same was served, and demanded of the insurance company that it perform its obligations under the policy, and defend at its own cost, the suit which had been instituted against the assured. Some time after the receipt of these notices, the insurance company denied its liability, claiming the policy did not cover accidents of this character, because the accident was not one incident to or arising out of "overhead construction and reconstruction work," but arose from a distinct and independent cause, that is, from the negligence of the street car company's motorman, operating a street car, which accident was not contemplated or covered by the policy, not being in any way due to the work being carried on. In reply to this contention, the street car company insisted the policy did in fact cover the accident, and that the insurance company should comply with its terms. The insurance company thereafter sent its representative from Dallas to El Paso, who, on reaching El Paso, made investigation, consulted with the attorneys for the insurance company, and also with the officials of the street railway company, and the Stone & Webster Engineering Corporation, and, while

at El Paso, compromised and settled with Judia his claim growing out of the same accident. Thereafter, the papers in the Shaklee case were placed in the hands of the attorneys for the insurance company, who took charge of the case, carried on negotiations with Shaklee and his attorneys, seeking a compromise and settlement for $6,000. This proposed settlement, however, was rejected by the home office of the insurance company, and later, some time in June or July, 1910, the insurance company took the position that the policy did not cover, and the papers were returned. The street car company, though still insisting that the policy covered and the insurance company was liable, had its attorneys take charge of and defend the Shaklee case.

It appears that the El Paso Electric Railway Company and Stone & Webster Engineering Corporation are separate corporate entities, but with close business relations. The former owns and operates an electric street railway line in El Paso. The latter is a repairing and construction company. The Stone & Webster Corporation did all, or nearly all, of the construction work for the railway company. Shaklee was a regular employé of the railway company, but at the time of the injury to him was on the pay roll of the construction company. His status at such time towards the two corporations is disclosed by the testimony which we now quote. Mr. Potter, the general manager of appellee, testified:

"I know how this overhead construction work is done, and how we pay our men. The men engaged in overhead construction work are paid by Stone & Webster Engineering Corporation. Whenever our employés work for the Stone & Webster Engineering Corporation, they are paid by them and it is charged up to us in the whole charge, charged up plus a percentage for doing the work. They pay the men, then we repay them for the work done. We pay them the whole charge plus a percentage, which includes the wages of the men. That was the method of doing business at the time Shaklee was injured, and is still. * * * Shaklee was working for the Stone & Webster Engineering Corporation at that time. He was sent out by the Stone & Webster Corporation to do certain repair work on the El Paso Electric Railway Company's trolley, and he was mounted up there on a wagon doing repair work when a passenger car of the El Paso Electric Railway Company struck the wagon. * * * We would pay the Stone & Webster Engineering Corporation for doing any work the cost of the job plus a certain percentage as profit. * * * So far as the work that Shaklee and Judia were doing at that time, they were serving Stone & Webster people and were being paid by them. They were working for the Stone & Webster Engineering Corporation at the time of the accident and on its pay roll. At that time Mr. Shaklee was not drawing double pay from the Stone & Webster Engineering Corporation and the El Paso Electric Railway Company. We were not paying on behalf of the El Paso Electric Railway Company at that time for the days he was working for the Stone & Webster Engineering Company. Shaklee might have been working for the El Paso Electric Railway Company in the morning of the day he was hurt, but

at the time he was doing this work he was working for the Stone & Webster Engineering Corporation. * * * The labor or help used by the Stone & Webster Engineering Corporation was furnished to them by the El Paso Electric Railway Company, and the labor was paid for out of funds furnished to Stone & Webster Corporation by the El Paso Electric Railway Company."

Mr. Judd, the assistant treasurer of appellee, testified:

"I was acting in this capacity during the month of February, 1910, at the time of the accident and injury to Shaklee and Judia. I am acquainted with Mr. J. E. Wilson. He is the line foreman for the El Paso Electric Railway Company, and was serving as line foreman for the El Paso Electric Railway Company in 1910. On February 3, 1910, Mr. Wilson was working for the El Paso Electric Railway Company, and the El Paso Electric Railway Company paid him for his services for that time. This time sheet is the information on which I issued his time check, of his pay for that day. I was acquainted with the Stone & Webster Engineering Corporation. The Stone & Webster Engineering Corporation handled the construction for the El Paso Electric Railway Company, nearly all of it; I would say nearly all of the construction of the El Paso Electric Railway Company. They do general construction work, but not small construction jobs that might be performed by the local operating company. In reference to how that matter is handled with Stone & Webser Company, a contract with them to perform certain work for us, they are to have charge of the work, we are to advance them money to carry on this work, and they render us a daily statement of the actual expenditures, plus 10 per cent., or whatever the contract calls for, as compensation to them for carrying on the work. The money is advanced to them out of the funds of the El Paso Electric Railway Company. Generally, Stone & Webster Engineering Corporation have their own employés to do their work, but in this particular case, inasmuch as we have an organization for overhead work and they had none, they called upon us to supply them men to do that work. The El Paso Electric Railway Company furnished them with help for overhead work, and they supervise the work, and pay for the work out of the funds advanced them by the El Paso Electric Railway Company, and they receive from the El Paso Electric Railway Company a compensation or profit of 10 per cent. for handling the job."

Mr. Wilson, line foreman for appellee on February 3, 1910, testified:

"As I recollect it, Stone & Webster Engineering Corporation was doing some double-tracking that day on West Rio Grande street just north of Oregon. Whether the other bunch was working I don't know. They generally had two or three. I don't recollect where they were working. Judia and Shaklee were working on West Rio Grande street just off of Oregon. They were using the tower wagon belonging to the El Paso Electric Railway Company on this double track just off of Oregon street. I think that the injury occurred to Shaklee and Judia about 5 o'clock in the afternoon. I believe somebody called my attention to seeing an ear off up there. It was about two blocks from where this ear was off to where Shaklee and Judia were engaged in the double-track work. It was my duty to look after the repair work such as replacing of that ear at that time. When I heard that this ear was off, I told Judia and Shaklee to go up there and fix it. I did not see them go up there, I went back down town."

[1, 2] Shaklee and Judia were injured under the following circumstances: The parties mentioned, at the time, were on a "tower wagon" owned by appellee, standing on or near the street car track. They were engaged in repairing or replacing an "ear" which had been torn from one of the overhead trolley lines of appellee. While so doing, a street car of appellee ran into the wagon and precipitated Shaklee and Judia to the ground, in consequence whereof their injuries resulted. The motorman of the car, an employé of appellee, was guilty of negligence in running into the wagon, and the accident was caused by his negligence. In Shaklee's suit he recovered of appellee upon the theory that he was an employé of appellee at the time of his injury.

Under the facts detailed, we are of opinion that the loss sustained by appellee through the Shaklee injury was clearly covered by and within the terms of the policy sued upon. No judgment could properly have been rendered except in favor of appellee, and a peremptory instruction to that effect would have been appropriate.

Appellant insists that under the terms of its contract the peril insured against was an accident occurring by reason of overhead construction work, and, since the accident was the direct and proximate result of the motorman's negligence, it is not liable. In our judgment, this is a narrow and strained construction to place upon the language of the contract. In construing a contract of insurance, it will be construed strictly against the insurer and liberally in favor of the assured, and if the words admit of two constructions, that will be adopted most favorable to the insured. Brown v. Insurance Co., 89 Tex. 590, 35 S. W. 1060; Goddard v. Insurance Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; Insurance Co. v. Dyche, 163 Ky. 271, 173 S. W. 785; Insurance Co. v. Gordon, 68 Tex. 144, 3 S. W. 718; Fireman's Fund v. Shearman, 20 Tex. Civ. App. 344, 50 S. W. 598; Hoven v. Assur. Corp., 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388.

The peril to those engaged in overhead construction work, arising from the negligent operation of cars by employés of appellee, was necessarily incident to such work. To limit the liability of appellant to those accidents which occurred exclusively and solely by reason of overhead construction work would narrow so its application as to exempt the insurer from liability in practically every case where a cause of action would arise in favor of the injured one and would render the contract well nigh meaningless. A cause of action would never arise except in cases where the negligence of the company, its agents or employés, was a direct and proximate cause of the injury. To permit appellant to escape liability in the case of injury to one engaged in overhead construction, upon the ground alone that such negligence was a

direct and proximate cause of the injury, would completely nullify the contract which it had issued. In the present case, the fact that Shaklee was engaged in overhead construction work was a direct and proximate cause of his injury, equally with that of the motorman's negligence. It was by reason of his engagement in overhead construction work that a combination of circumstances arose that resulted in his injury. If he had not been so engaged at the time the motorman negligently ran into the "tower wagon," the accident would not have occurred. We think the circumstances under which the accident occurred bring the case clearly within the terms of the policy. See Hoven v. Assur. Corp., 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388. But if it be not clearly within the same, then it must be admitted that it is not incapable of such construction, and, under the rule of interpretation to which allusion has been made, the doubt must be resolved against appellant.

[3] There is a provision in the contract that "claims arising by reason of injuries and/or death to persons whose compensation is excluded herein are not covered," and by virtue of this clause it seems to be contended under the fourth assignment that the policy did not cover the Shaklee injury, because at the time of the accident to Shaklee he was neither employed by nor was he upon the pay roll of appellee. The language of the contract is very peculiar. It is quoted in the first paragraph of this opinion. In effect, it insured appellee and the Stone & Webster Corporation, jointly and severally, against loss arising or resulting from damage claims of those employed by either of the parties, or both of them. Under the contract as drawn, it is of no importance in the employment of which of the two an injured employé might be held to be at the time of the injury. It makes no difference upon whose pay roll Shaklee was at the time of the injury and whose employé he was. It was either appellee or Stone & Webster Corporation, and this was sufficient.

Some point also seems to be made, under the last-quoted provision, of the fact that the compensation of the negligent motorman was not included in the policy. This is of no importance. The cause does not stipulate that it only covers cases in which the injury is caused "by" persons included in the policy, but covers injuries "to" such persons.

[4] Furthermore, if any defense was available, under this clause, based upon any failure to include compensation in the contract, as a basis for the premium paid, it was an affirmative defense which it was necessary to plead. See Ginners, etc., v. Wiley & House, 147 S. W. 629, and cases there cited.

[5] Under the sixth assignment, it is asserted the court erred in rendering judgment for an amount in the sum of $10,000 plus interest from September 25, 1910 (the date of the Shaklee judgment), until June 10, 1915, the date of the judgment in the instant case. It is contended that, as the policy did not provide for the payment of interest, the assured was not entitled to interest on any sum until the payment was actually made by it on November 6, 1911.

No such assignment was filed in the lower court, and the question is here raised for the first time. It may be doubted whether this presents such an error in law apparent upon the face of the record as would authorize this court to take cognizance thereof in the absence of a proper assignment filed in the court below. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Oar v. Davis, 105 Tex. 479, 151 S. W. 794; Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518. But, be this as it may, the assignment should be overruled. The authorities are in conflict as to the propriety under such contracts of allowing interest from the date the injured party recovers his judgment. It will serve no useful purpose to review the cases. The better rule, we think, allows such interest. In the case of Ætna Life Ins. Co. v. Bowling Green Gas Co., 150 Ky. 732, 150 S. W. 994, 43 L. R. A. (N. S.) 1128, a like contract was considered by the Kentucky Court of Appeals, and it was there held that interest was recoverable as an expense of litigation. Our views cannot be better stated than is done by the opinion rendered in that case, from which the following quotation is made:

"The substance of the contract on the point under consideration is that the insurance company will pay $5,000, and, in addition thereto, all cost and expenses of litigation, unless it elects to pay the $5,000 and settle without litigation any claim asserted against the assured. If it does so elect, then, in the words of the contract, 'it shall not be liable for further expense of litigation after such payment shall have been made.' This being our construction of the policy, it follows that, if the words 'expense of litigation' fairly include interest, damages, and cost, the insurance company must pay the amounts adjudged against it. Counsel for appellant contends that the words 'expense of litigation' do not include any of the items we have mentioned, and should be confined to the payment of attorney fees, obtaining witnesses, securing bonds, and other like expense incident to this class of suits; but to give the policy this construction would be to ignore, for the benefit of the insurance company, and to the prejudice of the assured, stipulations in the contract that are equally as binding upon it as the one fixing its liability at $5,000.

"The liability of the company is to be measured by all of the undertakings of the policy, and not alone by one. The policy should be construed as a whole, and effect given to all of its provisions, and, when so construed, the liability of the insurance company is not limited to $5,000, nor are the words 'expense of litigation' to be confined to the items of expense indicated by counsel. That $5,000 was not intended by the policy to be the full extent of the liability is made plain by the condition obligating it to pay, in addition to this, 'the expense of litigation,' and, when its agreement to pay the expense of litigation is considered in connection with the unlimited control of the litigation con-

ferred upon it by clauses D and E, its liability for the expense of litigation should be made broad enough to fairly cover all of the expense incurred in the litigation that it compelled the assured to engage in. The insurance company had the undoubted right to compel the assured, against his will, to engage in litigation, or else forfeit the right to any part of the indemnity he had contracted for, and as it could, by electing to insist on litigation, burden the assured, against his consent, with the cost and expense of a lawsuit, the provisions of the policy should be liberally construed for his benefit. We think the words 'expense of litigation' embrace all the expenses that the assured was put to by the litigation, including costs, damages, and interest on $5,000, and this construction is supported by the cases of Insurance Co. v. Henderson Cotton Mills, 120 Ky. 218, 85 S. W. 1090, 117 Am. St. Rep. 585, 9 Ann. Cas. 162; Southern Ry. News Co. v. Insurance Co., 83 S. W. 620, 26 Ky. Law Rep. 1217; Fidelity, etc., v. Southern Ry. Co., 101 S. W. 900, 31 Ky. Law Rep. 55; Cudahy Packing Co. v. New Amsterdam Casualty Co. (C. C.) 132 Fed. 623. Although a different conclusion was reached in the construction of somewhat similar policies in Davison v. Maryland Cas. Co., 197 Mass. 167, 83 N. E. 407; National & Providence Mills v. Frankfort Marine Ins. Co., 28 R. I. 126, 66 Atl. 58; Maryland Casualty Co. v. Elec. Co., 157 Fed. 514, 85 C. C. A. 106. We are unable to perceive upon what reasonable theory the words 'expense of litigation' should be limited to one part of the expense more than another, or why they should be held to include cost incurred in litigation and not interest or damages incurred in it. The damages that the assured incurred in appealing the case and the interest on the $5,000 that accrued pending the appeal are as much a part of the expense of litigation as the court costs. No sound distinction can be made between these items of expense. Certain it is that the assured was compelled to pay on account of this litigation the court costs, the damages, and the interest on $5,000 from the date of the judgment in the lower court, no part of which it would have been required to pay except for the litigation.

"An attempt, however, is made to distinguish between the items of damage and cost and the item of interest, and the argument is made that as the assured had the use of the $5,000 during the appeal, and as this use was worth the interest, therefore this should not be accounted an expense, as the assured did not lose anything by paying the interest. But this argument overlooks the fact that the assured had to pay to the claimant the interest it now demands, and, unless it recovers it from the insurance company, it will be out this item of expense incurred by the litigation. If the insurance company had paid the $5,000 when the judgment was rendered in the lower court, at which time the claimant first became entitled to interest, that would have ended its liability under the policy. But this it refused to do, and now, unless it pays the interest that accrued on this $5,000 after that time and pending the appeal, the assured will lose it. The fact that the assured had the use of the $5,000 pending the appeal has nothing to do with who shall pay this interest; but, if it did, the parties would be on an equal footing, because the insurance company also had the use of the $5,000 during the appeal. It is simply a question of which one should bear this item of expense, and we think the insurance company should."

See, also, Cannon, etc., v. Employer's Indemnity Co., 161 N. C. 19, 76 S. E. 536, Ann. Cas. 1914D, 1095.

Finding no error, the judgment is affirmed.