**OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, OF LONDON, ENGLAND, v. NORTHERN TEXAS TRACTION CO. (No. 9089.)**

(Court of Civil Appeals of Texas. Ft. Worth. June 5, 1920. Rehearing Denied July 2, 1920.)

**1. Insurance ⬳146(1)—Conditions at time of issuance may be looked to in determining extent of risk.**

It is a rule of decision applicable to the construction of insurance policies that, in order to determine the extent of the risk insured against, the conditions existing at the time of their issuance may be looked to.

**2. Insurance ⬳146(3)—Doubt resolved in favor of insured.**

An insurance policy will be construed strictly against the insurer, and in case of any doubt, ambiguity, or uncertainty in its terms, it will be resolved in favor of insured.

**3. Insurance ⬳435—Liability insurer of engineering firm liable to traction company for amount paid injured servant of subcontractor on work.**

Under provisions of liability policy issued by insurer to firm of engineers, insurer *held* liable to traction company for whom firm of engineers undertook to do work for amount paid to injured servant of subcontractor if it could be said his injuries were caused by the performance of the work undertaken by the firm of engineers.

**4. Insurance ⬳435—Meaning of requirement that injury to servant be "caused by performance of work" stated.**

A liability policy, issued to a firm of engineers which undertook to do paving work for a traction company, providing that the injury must have been caused by the performance of the work, meant substantially that injury to an employé (in the particular case the employé of a subcontractor) must have been sustained by reason of the performance of the work and as an incident thereto.

**5. Insurance ⬳435—Traction company's paving work held done by it within meaning of engineering firm's liability policy.**

Work of paving between and outside of its tracks required by the city as a franchise condition of plaintiff traction company suing the liability insurer of the firm of engineers which had undertaken the work on its (the traction company's) behalf, *held* being done and conducted by the traction company within the meaning of certain stipulations in one of the liability policies.

**6. Statutes ⬳113(1)—Act void as not within caption.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4955, making applicable to all insurance companies provisions applicable to life, fire, marine, etc., insurers, is null and void because not within the purview of the caption of the act of the Legislature adopting it.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Insurance �köö602—Statute as to vexatious delay does not apply to indemnity insurers.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4746, requiring losses to be paid promptly by various insurers, and penalizing vexatious delay, does not apply to indemnity insurance contracts against liability to another as distinguished from life, health, or accident insurance.

Appeal from District Court, Tarrant County; Ben. M. Terrell, Judge.

Action by the Northern Texas Traction Company against the Ocean Accident & Guarantee Corporation, Limited, of London, England. From judgment for plaintiff defendant appeals. Reformed and affirmed.

R. M. Rowland, of Ft. Worth, for appellant.

Capps, Cantey, Hanger & Short and Phillips & Trammell, all of Ft. Worth, for appellee.

DUNKLIN, J.  The Ocean Accident & Guarantee Corporation, Limited, of London, England, has appealed from a judgment in favor of the Northern Texas Traction Company in a suit by the latter company based upon three insurance policies. The case was tried before the court without a jury upon an agreed statement of facts, which is as follows:

"(1) At all the times hereinafter mentioned, the Northern Texas Traction Company was a corporation engaged in the business of operating street cars over the streets of the city of Ft. Worth, including Main street, as well as interurban cars over the same, passing from Ft. Worth to Dallas, and for both its urban and interurban cars held franchises from the city of Ft. Worth to operate the same over Main street, containing provisions requiring said Northern Texas Traction Company to pave and repave so much of Main street as lay between its rails in its double line of street railway track over said street, and for 18 inches on the outside thereof, with such material and like material as the city might from time to time determine and direct the paving of the remainder of said street, and to do the same according to the specifications furnished therefor by said city.

"The defendant being a corporation organized for, and engaged in the business of, writing all forms of liability and accident insurance.

"Prior to September, 1916, the city of Ft. Worth, by appropriate ordinances, directed and entered upon the work of repaving Main street, prescribing and making public plans and specifications therefor, which are unnecessary to incorporate here, and requiring, by likewise appropriate ordinances, the Northern Texas Traction Company to comply with said paving specifications, at its own cost and expense, for so much of Main street, in the said city of Ft. Worth, as was occupied by its double tracks laid thereon, and for eighteen inches on the outside of the rails thereof. The specifications

for this paving required the Northern Texas Traction Company to excavate the place at which it was required to pave to a considerable depth below the normal grade of said street, and lay a foundation of some character of concrete mixture, and being from such foundation a strip of concrete mixture to a sufficient height whereupon to lay its iron rails over which its cars were to be transported, to the end that when the iron rails would be flush with the completed surface of the finished pavement of the street, and between the same, for the entire distance which the company was required to pave (as well as the balance of the street), such specifications required a bed of sand to be laid on the concrete base, on which should be placed said wooden blocks, cemented together with some character of pitch, and rolled and tapped to an even surface, constituting the finished surface of the street.

"Prior to September the Traction Company entered upon the performance of this work according to such specifications, and in performing the same, and under terms of a general contract or arrangement with the Stone & Webster Engineering Corporation, the latter conducted said work for the Northern Texas Traction Company as engineers or supervisors, receiving a fixed consideration therefor, and acted in the performance of all such work as the agents of the Northern Texas Traction Company. (The general contract existing between the Northern Texas Traction Company and the Stone & Webster Engineering Corporation is hereto attached and made a part hereof, marked 'Exhibit A.') During the progress of this work, and prior to the 13th of September, the Northern Texas Traction Company, through the Stone & Webster Engineering Corporation, asked for bids from construction concerns for the laying of wooden blocks required in the pavement, furnishing all material except the asphalt filler, from the South Line of Weatherford street, according to the specifications above referred to, approximately 1,460 square yards.

"The bid for said work by H. K. McCollum of Ft. Worth, Texas, was accepted, and the latter entered upon said work of laying wooden blocks, and furnished all material therefor for the agreed consideration of $2.14 per square yard. The memoranda passing between the Northern Texas Traction Company, acting through Stone & Webster Engineering Corporation agents, and H. K. McCollum, covering the work above referred to, is hereto attached and marked Exhibit 'B.' During all the performance of said work by McCollum the same was inspected all the while by the Northern Texas Traction Company through its agents, Stone & Webster Engineering Corporation, and completed sections received by it and paid for by said Northern Texas Traction Company.

"(3) On the 11th day of February, 1916, the defendant Ocean Accident & Guarantee Corporation, Limited, executed and delivered to the Stone & Webster Engineering Corporation three contracts mentioned and described in the plaintiff's petition, which three contracts named the Northern Texas Traction Company among the concerns insured by same, and said contracts are made a part hereof, and marked 'Ex-

hibits C, D, E,' filed herewith, and all premiums were paid on said policies, and the same were all in force on the 13th day of September, 1916.

"(4) On the 13th day of September, 1916, one Charles Maher was engaged at work laying said blocks and finishing the paving on Main street between the rails of the Traction Company tracks, and for eighteen inches on the outside thereof, according to the specifications aforesaid on Main street, near the intersection thereof with Ninth street, and was seriously injured in the following manner:

"Maher, together with two other men, was engaged in moving back and forth across said paving blocks, after they had been set on the sand and the material poured between them, a large and heavy cement roller, designed and used for the purpose of giving said blocks a firm and durable seating on the sand foundation beneath them, and bring the same to a smooth and even surface on top, and while so engaged on said 13th day of September, 1916, operating said roller across said tracks and on said tracks, they were constantly moving the same back and forth in leaving the way for the interurban and urban cars of the repass on said lines of double tracks, the operation of said Traction Company's cars never having been at any time suspended or impeded during the progress of the work. An interurban car was passing the scene of the work going south, and Maher and his colaborer moved the roller to what was supposed to be a safe distance from the passing car, but before the car entirely passed the roller the same came in contact with the interurban car and Maher received his serious injury. The defendant company was notified of the accident, and the requirements of the policy in that particular complied with, but the defendant declined to take charge of the claim, or to recognize any obligation to protect the same. Maher brought suit against the Northern Texas Traction Company for the accident, and his claim was settled by the payment to him of $6,000 on the 12th day of June, 1917. The cost and expenses of the Traction Company in addition to the cost of attorney's fees for defending the suit, but including other expenses of immediate medical aid, etc., amount to the sum of $1,227.92.

"(5) It is agreed that Maher's injuries were very serious, and that the settlement by compromise at $6,000, and the payment of that amount to him by the Northern Texas Traction Company in settlement of his alleged cause of action, was an advantageous disposition of the matter, both to the Northern Texas Traction Company, as well as to the said Ocean Accident & Guarantee Corporation, if it should be held liable, and no point is made by the defendant that such compromise was not a reasonable settlement of the Northern Texas Traction Company's liability to Maher.

"(6) Charles Maher was employed and put to work on the job in question, and was at work at the time he was injured in the manner as hereinabove related, under employment by McCollum, who likewise was paying him by the day; and he had been at work for some days prior to the time he was injured.

"(7) During the time that Maher was at work on this job in the manner and form as above related, during the time McCollum was carrying out his contract, and at the point where Maher was hurt and elsewhere over Main street, the cars, urban and interurban, were passing back and forth over said line of double tracks almost momentarily, the operation of none of said cars being suspended during the performance of the work.

"(8) After the defendant declined to take charge of Maher's claim against the Northern Texas Traction Company and to defend the suit which he brought, and at its cost and expense, the Traction Company caused the same to be defended by its counsel, Capps, Cantey, Hanger & Short, to whom it paid an annual salary, and it, the Northern Texas Traction Company, never contracted nor paid to Capps, Cantey, Hanger & Short any extra compensation for defending said suit so brought by Maher, which was compromised as hereinabove stated.

"(9) The sum of $750 is here agreed upon as a reasonable attorneys' fee for the prosecution of this suit on the part of the plaintiff, in the event the statutes of the state awarding twelve per cent. damages and reasonable attorneys' fees are applicable to this case."

Judgment was rendered for appellee for $9,242.80 on the 16th day of May, 1918, against appellant, which amount included the $6,000 paid to Maher by appellee; $1,227.92 surgeon's bills, hospital fees, and court costs, witness fees, and investigation expenses paid out by appellee; $397.53 interest on the foregoing two items to date of judgment; $867.35, the statutory penalty of 12 per cent.; and $750, reasonable attorneys' fee under such statute.

The contract between the Northern Texas Traction Company and the Stone & Webster Engineering Corporation, referred to in the agreed statement of facts as Exhibit A, was upon the following form:

"Stone & Webster Engineering Corporation, 147 Milk Street, Boston, Mass.

"————, 19—.

"————————

"————————

"We hereby propose to construct for you

"I. SERVICE TO BE RENDERED. With respect to this work we proposed to act as your own construction and purchasing department, being guided in all respects by such instructions as you may from time to time give us.

"As constructors we will execute with our own forces the construction and install the machinery and equipment, subletting parts of the work when it is to your advantage to do so, and turn the completed work over to you ready for regular use.

"As purchasing agents we will purchase the necessary machinery, equipment, and materials.

"We will furnish at our own expense:

"(a) The service of our executive officers, who will direct and oversee the work performed under this agreement.

"(b) The service of an assistant construction manager and the construction department in the Boston office.

"(c) The service of the purchasing department in our Boston office, which will assist in

the purchase of the machinery, apparatus, and materials.

"(d) The service of the accounting and auditing departments in our Boston office.

"(e) All other expense of our Boston office.

"II. COMPENSATION. You are to pay us for the service specified above a sum equal to —— per cent. of the 'cost of the work' as defined in the next section, payments to be made at the end of each month, based on expenditures during that month.

"III. COST OF THE WORK. It is understood that 'cost of the work' shall include the following items, whether commitments or expenditures are made by you direct or by us for your account:

"(a) The cost of all materials, machinery, equipment, and labor.

"(b) The cost of any lands or rights of way required.

"(c) The cost of tools and construction equipment purchased and the rental of any equipment hired.

"(d) The cost of a work officer, including the salaries and expenses of a superintendent of construction, an accountant, a purchasing agent, and such assistants as they may require; the cost of all field engineering and inspection; the expense of maintaining the works office.

"(e) The cost of insurance and any expense incurred in connection with any accident or damage to person or property.

"(f) Any traveling expenses or expenses of a similar character, and any other expenditures we may make, except for items specified in section 1, as furnished at our own expense.

"IV. DISBURSEMENTS. Unless you prefer a different method of handling disbursements, we will make all payments for material, labor, equipment, services, etc., for your account from funds to be advanced to us by you for the purpose. We will give you each month a detailed statement supported by proper vouchers of expenditure during the previous month.

"V. PURCHASE AND CONTRACTS. You will have as full control as you care to exercise of the purchase of materials and equipment and of the letting of such subcontracts as may seem desirable.

"All contracts and orders placed by us, payrolls, and other obligations shall be in your name, 'By Stone & Webster Engineering Corporation, Agents,' and it is understood that we assure no pecuniary liability under or by reason of such obligations.

"VI. INSURANCE. Unless otherwise directed by you, and unless local laws require some other form of insurance, we will place insurance in your name and for your account covering your liability to employés engaged on this work and to the public for accident or damage in the sum of $10,000 for any one person, and $20,-000 for any one accident, the policies to be in the usual form.

"If you so request, we will place insurance in your name and for your account covering damage to the work, or any part of it, by fire.

"VII. PROGRESS REPORTS. We will render reports to you monthly showing the progress of the work in its various parts, and any changes that it may seem advisable to make in the estimates of cost or of time required for completion.

"VIII. AUDIT. Our correspondence record, voucher, and books of account, in so far as work done or money expended under this agreement are concerned, will be always open to your inspection.

"IX. TERMINATION OF EMPLOYMENT. If at any time you should become dissatisfied with the manner in which the work is being conducted, or should wish, for any reason, to discontinue the work, you are liberty, after ten days' notice in writing, to terminate our employment, and to take possession of the work done and material purchased for you under the terms hereof."

The contract made by the Northern Texas Traction Company, acting through Stone & Webster Engineering Corporation as its agent, with H. K. McCollum, for the paving referred to in the agreed statement of facts, shows that McCollum undertook and performed said work as an independent contractor.

One of the insurance policies issued by the defendant company was a contract of insurance against injuries that might be sustained by employés of the plaintiff company, and since Maher, who was injured, was not an employé of the plaintiff, but was an employé of McCollum, it is clear that that policy did not furnish any basis for a recovery, and the same will not be further noticed in this opinion.

Another policy, which is designated on the back as G. C. 129195, and which we will here designate as insurance against injuries suffered by the public, contained these stipulations:

"Does hereby agree as follows, respecting bodily injuries including death at any time resulting therefrom, whether instantaneous or not, accidentally suffered, or alleged to have been suffered, during the policy period defined in said declarations by any person or persons not employed by the assured while at the locations described in said declarations or elsewhere by reason of and during the prosecution of the trade, business, or work conducted by the assured at said locations and described in the said declarations."

"This policy does not cover in respect of bodily injuries or death caused by locomotives, engines, trains, motors, or cars propelled by gravity, steam, electricity, or other mechanical power unless such bodily injuries or death are proximately caused by the performance of work undertaken by the Stone & Webster Engineering Corporation."

"It is hereby understood and agreed that the undermentioned policy is extended to grant coverage in respect of work done by the assured anywhere in the state of Texas which is not comprised in the description of the trade, business, or work set forth in declaration No. 5 of the said policy, and the assured agrees to pay a premium in respect of such additional work calculated according to the premium rates in use by this corporation at the date when the said policy takes effect."

The third and remaining insurance policy, which is designated on the back as "F. C. 2393," covers insurance against injuries suffered by employés of any subcontractor of the plaintiff. That policy contained the following stipulations:

"Does hereby agree (1) to indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries (including death at any time resulting therefrom) accidentally suffered, or alleged to have been suffered, during the policy period defined by reason of the performance of the work sublet by the assured to independent subcontractors, and described in said statements, or through the existence of materials intended for such work placed upon the premises described in said statements or lawfully maintained upon the ways adjacent thereto."

"Paragraph 4 of the statements provides:

" 'The assured is a contractor who has undertaken certain work, and has or will sublet certain portions thereof to independent subcontractors, to which work so sublet this policy shall alone apply.'

"Statement No. 5, which calls for 'a full description of all work undertaken by independent subcontractors and covered by this policy,' specifies such work to be: 'All work subcontracted by the Stone & Webster Engineering Corporation anywhere in the state of Texas.' "

Both of said policies were issued to the Stone & Webster Engineering Corporation, who is designated in each as the "assured," and by slips attached thereto the insurance is extended for the benefit of several firms for whom that corporation shall perform work, including the plaintiff in this controversy, each and all of whom are likewise designated as the "assured." In other words, each policy is a blanket insurance for the benefit of the Stone & Webster Engineering Corporation, and each and every firm for whom that corporation might perform services and whose names might thereafter be added as beneficiaries of the policy. Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo. App. 327, 133 S. W. 664.

[1] It is a rule of decisions applicable to the construction of insurance policies in order to determine the extent of the risk insured against that the conditions existing at the time of their issuance may be looked to. Royal Ins. Co. v. T. & G. Ry Co., 53 Tex. Civ. App. 154, 115 S. W. 117, 123; Maryland Casualty Co. v. Little Rock Ry. Co., 92 Ark. 306, 122 S. W. 994; Continental Paper Bag Co. v. Bosworth, 215 S. W. 127.

[2] It is also a rule well established that such a policy will be construed strictly against an insurance company, and, in case of any doubt or ambiguity or uncertainty in its terms, the same will be resolved in favor of the assured. Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060; Goddard v. East Texas Fire Ins. Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; Ætna Life Ins. Co. v. El Paso Elec. Ry. Co., 184 S. W. 628.

The following are some of the definitions given in the Standard Dictionary (20th Century Edition) of the word "undertake":

"(1) To take in hand as a task or enterprise; endeavor to perform; attempt; try, essay. * * * (2) To guarantee the performance of; contract to do or have done; pledge oneself to; covenant; engage; frequently followed by an infinitive phrase. * * * To make oneself answerable or responsible; also, to enter upon an undertaking; as, men who undertake readily are often slow to perform. Law. To promise, engage, or agree; assume an obligation. To enter into any contract or business relationship; especially, to act in any way on another's behalf; hence, to assume a hazard or venture."

[3] We are of the opinion that the contract with the Stone & Webster Engineering Corporation to "execute, with its own forces, the construction, and install machinery and equipment, subletting parts of the work when it is to your interest to do so, and turn the completed work over to you in the Boston office," was a contract to undertake the paving work, in a general sense, and within one of the accepted meanings of that term. Hence we are of the opinion that under one of the provisions of the policy G. C. 129195, quoted above, the defendant company was liable to the plaintiff for the amount paid to Maher if it can be said that his injuries were "caused by the performance of the work undertaken by the Stone & Webster Engineering Corporation." It is true that Maher was injured by a passing car, but it was while he was performing paving work, and his injuries were incident to that work.

[4] It would be difficult to attribute any reasonable meaning to the language that the injury must be "caused by the performance of the work" unless that language be interpreted as meaning substantially that the injury must be sustained by reason of the performance of work and as an incident thereto, and we think that such is the proper and reasonable construction to be placed on that language in the policy.

[5] We are of the opinion, further, that in a general sense the work of paving was being done and conducted by the plaintiff company, within the meaning of other stipulations in the policy G. C. 129195. Ætna Life Ins. Co. v. El Paso Electric Co., 184 S. W. 628 (writ denied).

In 4 McQuillin, Municipal Corporations, § 1649, the following is said relative to a franchise granted to a municipal service corporation:

"Conditions in a franchise, accepted by the company, cannot afterwards be repudiated, since they then constitute a contract; and the use of the street by a public service company constitutes an acceptance of the conditions."

Again, in paragraph 1672, the author says:

"A grant to a public service company of the right to use a street, when accepted, becomes a

contract between the municipality and grantee, and the conditions therein are binding, the same as the terms of any other contract, both on the municipality and the company, and protected by the provision of the federal Constitution against impairment of contracts, so that, unless the right so to do has been reserved, the grant cannot be revoked, nor additional burdens imposed, as against the objection of the company."

And section 1721 reads in part as follows:

"Where a contract is entered into between a public service corporation and a municipality, the contract is to be construed the same as any other contract, subject to the rules already set forth in regard to the construction of contracts made with a municipal corporation."

To the same effect is Milwaukee Elec. Ry. Co. v. State, 252 U. S. 100, 40 Sup. Ct. 306, 64 L. Ed. ——.

When the Northern Texas Traction Company accepted the franchise granted by the city upon condition that it would do the paving work mentioned in the agreed statement of facts, it thereby assumed the contractual obligation to perform such work, and in a general sense it became the original contractor with the city to do such paving. And we are of the opinion that in the interest of the assured that construction should be given to the policy F. C. 2393, and in accordance with that interpretation McCollum was clearly a subcontractor, and the liability of the plaintiff to Maher for the injury he sustained was covered by the latter policy.

[6, 7] Accordingly, we are of the opinion that the judgment in favor of the plaintiff should be sustained with the exception of the penalty and attorneys' fees allowed by the trial court, which we do not think were recoverable, and should be eliminated from said judgment. Articles 4746 and 4955, V. S. Tex. Civ. Statutes, are relied upon by the plaintiff to sustain the recovery for the penalty and attorneys' fees, but, as pointed out in National Surety Co. v. Murphy-Walker Co., 174 S. W. 997, and Western Indemnity Co. v. Free and Accepted Masons of Texas, 198 S. W. 1092, article 4955 is null and void because it was not within the purview of the caption of the act of the Legislature adopting it, and in the case last cited this court held that article 4746 of the Statutes did not apply to indemnity insurance contracts against liability to another, as distinguished from life, health, or accident insurance, within the meaning of that article.

For the reasons stated, the judgment of the trial court is so reformed as to eliminate therefrom a recovery of the penalty and attorneys' fees, and as so reformed it is affirmed.