## No. 2349.

### THE NEW ORLEANS INSURANCE COMPANY *v.* H. O. GORDON.

1. INSURANCE.—A policy of insurance which, by its terms, is to become void if the property insured shall be sold or transferred, or if the interest of the assured be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, is not avoided by a deed subsequently made by the assured to another for the sole purpose of enabling the owner, through him, to negotiate a loan which was never effected, and which was not intended by either party to convey title.

2. SAME.—The language of a policy of insurance, being the language of the insurers, is to be construed most strongly against them.

3. SAME.—A policy, with conditions such as are stated above, is not vitiated by a deed to another by a transfer of the property as collateral security for a debt due, and an action on the policy may be maintained by the assured for the use of his creditor, the assured being the real party plaintiff.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

*Hutcheson, Carrington & Sears,* for appellant, on their proposition that under the statutes of Texas regulating the assignment of non-negotiable instruments, or choses in action, the assignee of an insurance policy, assigned after a loss, can alone maintain a suit on it, cited Revised Statutes, articles 266, 267; East Texas Fire Insurance Company v. Coffee, 61 Texas, 290, 291, and cases cited on page 291.

On their proposition that the court erred in rendering a judgment for the plaintiff, because the evidence showed that after the issuance of the policy, and before the loss, the property had been sold and transferred by Gordon, the assured, to Keller, and

a change had taken place in the title of the property, in viola-
tion of the terms and conditions of the policy, the title not being
in Gordon even at the date of the fire, they cited Wood on
Fire Insurance, sections 315-317; Savage v. Howard Insur-
ance Company, 52 New York, 502; Springfield Fire and Marine
Insurance Company v. Allen, 43 New York, 389; Grosvenor
v. Atlantic Company, 17 New York, 391; Orrell v. Hampden
Insurance Company, 13 Gray, 431; Edmands v. Mutual Insurance
Company, 1 Allen, 311; McIntire v. Norwich Insurance Company,
102 Massachusetts, 230; Abbott v. Hampden Insurance Company,
30 Maine, 414.

On their proposition that the policy was void, and the court
erred in rendering a judgment thereon for plaintiff, because, if
it be conceded that Gordon had an insurable interest left in the
property, such interest was not truly stated in the policy; that
he thus directly violated the terms of his contract with the in-
surer, they cited Wood on Fire Insurance, section 218; Day v.
Charter Oak Insurance Company, 51 Maine, 91; Hutchins v.
Cleveland Insurance Company, 11 Ohio State, 477.

On their proposition that the policy was void, and the in-
surance contract inoperative, because, if it be conceded or held
that the conveyance to Keller was made and took effect prior
to the issuance of the policy to Gordon, then Gordon, the as-
sured, violated the terms of his contract requiring that if the
interest of the assured in the property be any other than the
entire, unconditional and sole ownership of the property for the
use and benefit of the assured, it must be so represented to the
company, and so expressed in the policy or the policy should be
void, they cited Crescent Insurance Company v. Camp, 64 Texas,
521-527; Reaper City Company v. Brennan, 58 Illinois, 158, 159;
Treadway v. Hamilton Insurance Company, 29 Connecticut, 68;
Smith v. Bowditch Fire Insurance Company, 6 Cushing, 448;
Insurance Company v. Haven, 95 United States, 249; Savage v.
Howard Insurance Company, 52 New York, 509.

On their proposition that with the recorded title in Keller, for
the definite purpose of borrowing money on the property, it was
impossible for the "ownership" of Gordon to have been "entire
and unconditional," they cited Western Massachusetts Insurance
Company v. Ricker, 10 Michigan, 279; Tomlinson v. Monmouth
Insurance Company, 47 Maine, 232.

*W. P. Hamblen,* for appellee, on his proposition that where an

insurance policy is transferred for the purpose of securing a debt to another, the assured is the proper party to a suit for such other person's use, he cited Wood on Insurance, 817. On his proposition, that as long as the assured has an interest legal or equitable or any interest in the subject matter insured so that a destruction of the property would involve the insured in pecuniary loss, he has a right to recovery for the loss, he cited Wood on Fire Insurance, 493, and cases cited, particularly Rohrbach v. Germania Insurance Company, 62 N. G. R., 47; Wood on Fire Insurance, 488, 489, et seq., and cases cited.

WILLIE, CHIEF JUSTICE.   H. O. Gordon brought this suit for the use of Theodore Keller against the appellant, to recover seven hundred dollars for the loss by fire of a store house insured by the latter; the policy having been assigned by Gordon to Keller after the fire occurred.

It seems that the policy was issued August 3, 1884, and contained among others the following provisions: "If the property be sold or transferred, or any change take place in the title or possession (except by succession by reason of the death of the assured), whether by legal process or judicial decree or voluntary transfer or conveyance, this policy shall be void." * * * "If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured; or, if the building insured stands on leased ground, it must be so represented to the company and so expressed in the written part of the policy, otherwise the policy shall be void."

About three days previous to the issuance of the policy, viz., on July 31, 1884, Gordon had made to Keller a deed for the property insured, which deed was acknowledged and recorded on August 6, 1884, subsequent to the date of the policy.   This deed was made for the purpose of enabling Gordon to obtain a loan of money for Keller from the Houston Homestead and Loan Association.   Gordon could not do this directly because he was not a shareholder in the company.   Keller was; and the company, with knowledge of the purpose for which the deed was made, were willing to loan the money; but upon examination Gordon's title was found to be defective, and so the loan failed. Gordon, however, thought he might remedy the defects in his title, and for that reason let the deed to Keller stand, so that, if he should succeed, the loan could be effected.   The defects,

however, had not been remedied up to the time of the fire, and hence the apparent title remained at that time in Keller; but he subsequently reconveyed to Gordon. There was evidence to show that Gordon was indebted to Keller at the time the deed was made, and there was some evidence to the effect that Keller was expected to get some of the benefit of the money loaned to Gordon in payment of what the latter owed to Keller. Keller, however, says that the money was to go towards work done on the property conveyed, and that was what it was wanted for. Keller did not know whether Gordon would have given him any of the money or not. He supposed it was to pay him and the carpenters.

Keller seems to have had no recollection as to having possession of the deed until he went with Gordon to the Homestead Association to procure the loan. When the policy was offered in evidence it was objected to, because it had been fully assigned so as to place the legal title in Keller, and was not evidence of any right in Gordon to bring this suit or to recover the insurance money. This objection was overruled by the court. Judgment was rendered for the plaintiff.

Upon the state of case made by the evidence the defendant claims that the policy was avoided, whether the deed to Keller was made before or after the execution of the policy. It is very true that, if the deed conveyed any interest or ownership in the land, or burdened the title of Gordon with conditions within the meaning of the policy, it would be in violation of one or the other of the clauses of the policy which we have recited, and be violative of its provisions, no matter which of the two instruments was first in taking effect·

The main argument of the appellant to support its position that the deed did have this effect rests upon the assumption that it was in the nature of a mortgage to secure an indebtedness of Gordon to Keller. The evidence of Keller is to the contrary. He shows nothing but a mere hope or supposition that Gordon would pay him some of the money borrowed from the association. It will certainly not be necessary to produce argument or authority to prove that this was not a binding obligation, and created no lein upon the property. It is true that there was testimony tending to show that there was an undefined agreement between Gordon and Keller as to the latter's having some sort of claim upon the borrowed money; but it was too indefinite to create a lien.

But even if it would have created a lien, this testimony is in conflict with that of Keller, and we must give effect to the latter as being in support of the judgment. The judge did not make a record of his conclusions of law and of fact, and we must treat the case as if he found in favor of the evidence which authorized the judgment rendered by him. As the loan was not effected there was no mortgage of property to the association, and the question of whether a mortgage or other lien upon the property would change the interest of Gordon therein, or incumber that interest with conditions within the meaning of the policy, is eliminated from the case. The only matter to be considered is whether a mere deed not intended by either party to convey title, and under which the grantee was to take no interest, effected any change in the ownership of the property. To state this proposition is to decide it in the negative. The most that can be said of it favorable to the appellant is, that it put the apparent legal title in Keller; but to hold that this changed the ownership of the land, rendered it conditional— made it enure to the use or benefit of any person but Gordon, or transformed or changed the title to Keller within the meaning of the policy, is to give a technical construction to that instrument for the purpose of destroying the rights of the assured.

The rule is directly to the contrary. The language of the policy being the language of the insurers, is to be construed most strongly against them, so as to give to the assured the indemnity for which he has bargained. When the policy required entire and sole ownership, it must have meant an ownership in which no one else shared, and against which no one else could claim an interest. When it required that ownership to be unconditional, it must have meant an ownership which depended upon the performance of no condition whatever. When it required that this should be for the use and benefit of the assured, it must have meant that the full equitable title should exist in the assured. When it required that the property should not be sold or transferred or any change take place in the title or possession by conveyance, it certainly did not mean that a conveyance which did not transfer the title or work any change in it whatever, should defeat the policy. Gordon's title after the deed was made was substantially, if not literally, such a one as was required by the policy.

If his ownership after its execution was not as great as before, then the deed must have conveyed to the grantee some interest

or right which he could assert to the property by reason of the deed; and yet no right of that kind existed, as was fully shown by the evidence. Keller could not have claimed any right whatever as against Gordon, either as a plaintiff or defendant in a suit with reference to the property.

"The object of providing against a transfer or change of title is to guard against a diminution in the strength of the motive which the insured may have to be vigilant in the care of his property." (May on Ins., sec. 273.) That vigilance in the care of the property is not likely to be diminished when the assured is the only one who can possibly suffer by its destruction. "If there is no change in the fact of title, but only in the evidence of it, and if this latter is merely nominal and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated." (Ayers v. H. Ins. Co., 17 Iowa, 185.)

There is a vast difference between having a deed and having title to land. The former is evidence of the latter, but may exist without it; and here, whilst Keller had a deed to the property, the title remained in Gordon for all purposes, and especially for every purpose connected with its insurance against fire. Numerous authorities could be cited to sustain these positions, but it will not be necessary, as it is believed that none can be found to hold that such a conveyance changes the title. Those cases which hold that a deed not intended to convey title does pass any interest out of the grantor, in violation of a policy such as the present, are either cases where the deed was intended as a gift, a mortgage, or some similar instrument; and even as to some of these there is a conflict of decision. (Insurance Company v. Ricker, 10 Michigan, 279; Savage v. Insurance Company, 52 New York, 502; Shepherd v. Insurance Company, 38 New Hampshire, 232.)

We think the entire interest in the property and its full ownership, as contemplated by the policy, remained in Gordon after delivery of the deed, and that it was not in violation of any of the provisions of the policy, and there was no error in the judgment in so declaring.

Nor was there error in overruling defendant's objections to the admission of the policy in evidence. The proof showed that it was transferred to Keller as collateral security for a debt due him from Gordon, and that the plaintiff thereupon had an interest in its proceeds. Whilst the suit might have been brought by

Keller alone, yet, as was said in East Texas Fire Insurance Company v. Coffee, the equitable right of Gordon entitled him to be a party plaintiff in the cause. His suing for the use of the latter renders him the real party plaintiff; the judgment bound both him and Gordon, and the insurance company was fully protected.

There is no error in the judgment, and it is affirmed.

*Affirmed.*