## INTERNATIONAL TRAVELERS' ASS'N v. GUNTHER. (No. 7285.)*

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1925. Rehearing Denied Feb. 25, 1925.)

**1. Insurance ☞124—Policy constitutes a contract between insured and insurer.**

Policy of insurance constitutes a contract between insured and insurer.

**2. Insurance ☞146(3)—Contract strictly construed against insurer.**

Insurance contract is to be strictly construed against insurer, and, if any doubts, must be resolved in favor of insured.

**3. Contracts ☞318—Forfeitures not favored.**

Forfeitures are not favored by law.

**4. Insurance ☞146(3)—Clause of forfeiture in insurance contract construed against forfeiture.**

Any clause of forfeiture in an insurance contract will be construed consistently with reason against forfeiture.

**5. Insurance ☞146(3)—Forfeiture will not be declared on matters arising from implication.**

Forfeiture of rights under accident policy will not be declared on matters arising from implication.

**6. Insurance ☞146(2)—Contract will be enforced like any other contract on ascertainment of its meaning.**

On ascertainment of meaning of language and intent of parties, contract of insurance will be enforced like any other contract.

**7. Insurance ☞531½, New, vol. 16A Key-No. Series—Policy of life insurance providing for double indemnity if insured died from accidental means held not "other insurance" within clause in accident policy.**

Policy of life insurance providing for double indemnity, if insured died from accidental means for which an additional premium was paid, held not "other insurance covering same loss" as policy insuring against accidental death.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Other Insurance.]

**8. Insurance ☞146(1)—First object of construction is to ascertain intention of parties and to interpret policy thereby.**

First object of construction is to ascertain intention of meaning of parties and to interpret policy by that intention or meaning.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Eleanor L. Gunther, administratrix, against the International Travelers' Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, and Mann, Neel & Mann, of Laredo, for appellant.

S. T. Phelps, of Laredo, and Hicks, Hicks, Dickson & Bobbitt and R. D. Wright, all of San Antonio, for appellee.

FLY, C. J. Eleanor Gunther, as temporary administratrix of the estate of John Frederick Gunther, deceased, brought this action against appellant to recover $6,000, alleged to be due by reason of the accidental death of said John Frederick Gunther, who was insured against accident in a policy issued by appellant. No jury was demanded, and upon a hearing judgment was rendered in favor of appellee for $6,135, being the principal sum with 6 per cent. interest from February 1, 1924.

We adopt the agreed statement of facts as the conclusions of fact of this court, omitting unnecessary matter:

"On May 8, 1922, the defendant, International Travelers' Association, a mutual assessment accident insurance home company, incorporated under chapter 5, tit. 71, of the Revised Statutes of Texas, issued this accident and health policy insuring John F. Gunther against death or injury through accidental means. At the time of his injury and death, as hereinafter stated, the insured had paid an annual premium in advance; and it will be noted that in article 3, § 1, it is provided, in substance, that, if the insured be entitled to indemnity for loss of life, and if the injury causing the loss be suffered within a year from the date when insured has paid an annual premium in advance, the indemnity would be $6,000 instead of the normal $5,000. Whatever the plaintiff is entitled to under the terms of this policy is payable to the insured's administrator, as his estate is the beneficiary.

"This policy provided in article 10, § 17, as follows:

"'If the insured shall carry with another company, corporation, association, or society other insurance covering the same loss without giving written notice to the Association, then in that case the Association shall be liable for only such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined.'

"John F. Gunther was fatally injured by being thrown from an automobile in which he was riding on October 7, 1923, near Laredo, Tex., and he died as a result of said accident on the 9th day of October, 1923; he left a surviving wife as his sole heir, namely, Eleanor L. Gunther, who shortly after his death made application and was appointed temporary administratrix of his estate, with authority to collect this claim, and she has duly qualified as such temporary administratrix.

"The plaintiff gave to the defendant due notice of the injury and death of her said husband, John F. Gunther, and within reasonable time, and within the time provided by the poli-

cy, furnished all necessary proofs of injury and death, and requested payment of said policy in the sum of $6,000.

"At the time of the injury and death of Gunther, he carried an insurance policy for $5,000 in the Bankers' Life Company, Des Moines, Iowa, which policy at the times mentioned was in good standing. It will be noted that this policy insures the life of Gunther against death from any cause to the extent of $5,000, but it contains a further provision in the rider entitled Agreement for Double Indemnity Benefit, under which, in the event of death from bodily injury effected solely through external, violent, and accidental means following within sixty (60) days after the injury, double indemnity shall be paid, in this instance $10,000.

"The double indemnity, that is $10,000, in the Bankers' Life Company was promptly paid unto Eleanor L. Gunther upon proof of injury and death.

"No notice, written or otherwise, was ever given by the insured, the beneficiary, or any one else unto the defendant, that John F. Gunther was carrying other insurance of any kind with any company other than with the defendant, International Travelers' Association, and defendant had no notice that other insurance was carried by Gunther until after his death."

Appellant admitted liability on the policy to the extent of $3,272.40, and, further, an indebtedness of $35.84 as a refund on the premium, and tendered the two sums into court. Appellant contends that the double indemnity provided for in the Bankers' Life policy was accident insurance, and brought it within the terms of article 10, § 17, of the policy in regard to other insurance than that provided in appellant's policy, and would reduce its liability to $3,308.34, which it tendered into court.

It is admitted that no notice was given to appellant of any other insurance covering the same loss as that covered by appellant, and if the double indemnity can be held to be insurance covering the same loss provided for in article 10, § 17, of appellant's policy, then under the terms of that article appellant would "be liable for only such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity" in the two policies held by deceased. We have not discovered any Texas case directly in point on this subject.

[1-5] A large portion of the brief of appellant is devoted to the proposition that a policy of insurance, either life, accident, or fire, constitutes a contract between the insured and insurer. No one in this case, or in any that we remember, has contended that such policy is not a contract, and authorities and argument are unnecessary to support the proposition. However, it is a contract the contents of which are dictated by the insurance company, and the insured could not before accepting it add one word to or subtract one word from that contract. This con-

dition of affairs has caused courts everywhere to hold that the contract must be strictly construed against the insurer, and if there be any doubt as to the construction of the contract the doubt must be resolved in favor of the insured. Forfeitures especially are not favored by law, and any clause of forfeiture in an insurance contract will be construed, in consistency with reason, against the forfeiture The language of the forfeiture is prescribed by the insurance company, and the right to a forfeiture is stricti juris, and will not be favored by liberal intendment and enlarged construction, and no forfeiture will be declared upon any matters arising from implication. Joyce Ins. vol. 1, § 220, and numerous authorities cited. That rule has met with universal acceptance in Texas. Goddard v. Ins. Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; Ins. Co. v. Gordon, 68 Tex. 148, 3 S. W. 718; Brown v. Ins. Co., 89 Tex. 590, 35 S. W. 1060; Sullivan v. Ins. Co., 89 Tex. 665, 36 S. W. 73; Decker v. Kirlicks, 110 Tex. 91, 216 S. W. 385; Ocean Accident Co. v. Traction Co. (Tex. Civ. App.) 224 S. W. 212; Philadelphia Underwriters v. Moore (Tex. Com. App.) 229 S. W. 490.

[6] It is not open to argument that upon ascertainment of the meaning of the language used in the contract and the intent of the parties, the contract of insurance will be enforced like any other contract. Whenever it is ascertained what article 10, § 17, of the policy in this case meant this court or any other will enforce it as between the parties to it.

[7] The decision of this case must turn upon construction of the words "other insurance covering the same loss," used in article 10, § 17, hereinbefore copied. There can be no doubt that the Bankers' Life Company, in which deceased was insured in 1920, was a life insurance company and not an accident insurance company. There is nothing in the record indicating that it had any authority to insure against accidents, nor is there in the policy anything to show that it was endeavoring to insure deceased against accidents. In the body of the policy the life of the deceased was insured against any kind of death, but in what is called a "rider," attached to the policy it was provided that, in case he died "from bodily injury effected solely through external, violent, and accidental cause, * * * the Bankers' Life Company agrees to pay double the amount called for in the first paragraph, page 1, of this policy." An additional premium was to be paid for this double indemnity. It seems clear that there was no intention to insure against accident, but merely to increase the life insurance if the insured died in a certain way or from certain causes. If it had been provided that the life insurance should be doubled if the insured died from pneumonia or from an op-

eration for appendicitis, it would not be contended that the insurance had been changed from life to health insurance, but it would be apparent that the life insurance company was merely binding itself to pay double the amount of insurance if death resulted in a certain way.

Deciding a case involving a question similar to the one now under discussion, the Supreme Court of Missouri held:

"The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the contract or policy a particular designation in the business or insurance world, will not in the least divest the contract or policy of its chief character of insurance on life, or make the contract other than life insurance." Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948.

Again the Missouri Supreme Court held in Jones v. Prudential Ins. Co., 208 Mo. App. 679, 236 S. W. 429:

"In deciding the character of this contract between the parties, it may be well to bear in mind the difference between an ordinary life policy and an accident policy. In an ordinary life policy the insurer contracts to pay a certain sum of money, when satisfactory proof is made that the insured has died. Death is the contingency which must happen that will create liability under the contract. Liability attaches under such a policy when death occurs, and the policy is in good standing irrespective of the cause of the death, whether it be brought about by natural causes, by intention, or by accident; and, in the broad sense, any life insurance policy is accident insurance, if perchance the death is occasioned by reason of an accident. On the other hand, the primary contingency insured against in an accident insurance policy is that no accident will befall the insured under the terms of the policy and in such time as the policy is kept alive. * * * It may be said that in an ordinary life policy death is the contingency insured against, and if it be the result of an accident such accident is but incidental, while in the accident policy the accident is the thing insured against, and death is but one of the incidents or classes of injuries insured against."

We think these authorities are sufficient to show that the Bankers' Life Company did not insure deceased against accident, but against death from any cause, only agreeing to pay more if the death resulted from accidental causes.

It is not contended that the regular insurance in the body of the life insurance contract was intended by the words "other insurance covering the same loss," and, if it be true that the additional life insurance against a "violent and accidental death" was still life and not accident insurance, then there was no violation on the part of deceased of the clause under consideration. The construction contended for by appellant, we are convinced, is one never contemplated by the parties, and not justified by the facts. It has been so held in the case of Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N. W. 97, 29 A. L. R. 93, by the Supreme Court of Wisconsin. That court had under consideration a clause of an accident policy identical with the one now under consideration, and it was held:

"The contention of appellant is that the policy issued by the Northwestern Mutual Life Insurance Company was for the same loss covered by the accident insurance policy sued upon, and that defendant is liable only for such portion of the indemnity promised in its policy as the said indemnity bears to the total amount of like indemnity in all policies covering such loss. While both policies furnished indemnity in case of accidental death, they were not alike in any other provision. The Northwestern Mutual Life Insurance policy provided indemnity in case of death from whatever cause. This, of course, included death by accident. It is well understood that death benefits are not the dominant feature of an accident insurance policy. The dominant feature of that kind of a policy is indemnity for loss of time resulting from accident. These two policies overlap only in the one contingency—accidental death. In no other respect are they alike, and in no other respect did they cover the same loss."

In that case the policy in the life insurance company was identical as to the double indemnity with the double indemnity in this case.

The Supreme Court of Wisconsin, in addition to holding that the two overlapped only as to accidental death, might have held that even without the double indemnity they overlapped as to accidental death, for the regular life insurance was against accidental death as well as death from other causes. The only effect of the "rider" on the life insurance policy was to double the insurance in case of death from a certain cause. The policy of appellant was in no sense life insurance, but it describes its policy as:

"Full life indemnity policy, providing indemnity for bodily injuries sustained through accidental means and resulting in disability, or loss of life, limb, or sight, and loss of time from sickness, to the extent herein provided."

Loss of life is one seldom expected or which seldom occurs under an accident policy. The important and prime purpose is to insure against accident or ill health, not resulting in death. The life insurance policy gives indemnity against death alone. The two policies are radically and essentially different. When for a consideration the life insurance company agreed to pay a greater indemnity for a death from certain causes that did not change it into an accident insurance company. The life insurance policy provision as to accidental death was not "other insurance covering the same loss." The life insurance policy covered death by accident without the rider, and it covered

no more after attaching the rider. It did not before or after attaching the rider carry insurance against "loss resulting from injuries," effected through accidental means, and it did not carry insurance against sickness. Those were the main items in the accident policy, and those losses were not covered in the life policy. As said by the Missouri court in Jones v. Insurance Co., 208 Mo. App. 679, 236 S. W. 429, herein cited:

"In deciding the character of this contract between the parties, it may be well to bear in mind the difference between an ordinary life policy and an accident policy."

When this difference is borne in mind it is clear that the insurance carried in the Bankers' Life Company is not "other insurance covering the same loss".

[8] The first object of construction is to ascertain the intention or meaning of the parties, and to interpret the contract by that intention or meaning. The purposes of the two policies throw light on the intention or meaning, and it could not have been the intention of the parties to the accident policy to contract against life insurance as "covering the same loss," as that not insuring against loss by injuries, sickness, or death. Such construction would make it necessary to recite in every life policy that it did not insure against death by accident, if the insurer desired an accident policy. The deceased in this instance was insured against loss by his accidental death without the rider, the latter did not change the nature of the life policy, but merely, for an increased premium, added to the indemnity if death occurred in a certain way.

We conclude that the judgment should be and is affirmed.