WALTERS et al.

v.

CENTURY LLOYDS INS. CO.

No. 12642.

Court of Civil Appeals of Texas.

Galveston.

March 25, 1954.

Rehearing Denied April 29, 1954.

R. H. Burks, Houston, for appellants.

Edwin H. Frank, Jr., Houston, and Chaney & Davenport, and F. B. Davenport, Dallas, for appellee.

CODY, Justice.

This was an action on a policy of fire insurance issued by the Century Lloyds Insurance Company to Mrs. L. P. Walters covering a frame building cafe for $5,000 and also covering the personal property therein for $2,500, brought by the insured joined by her husband against the aforesaid company. The insured alleged, so far as we need here consider, that in the early morning hours of August 26, 1951, during the term that the policy was in force, the insured property was completely destroyed by fire. The other material allegations of the insured are sufficiently indicated in the special issue which was submitted to the jury and which is hereinafter quoted.

The insurer answered setting up policy defenses to the effect (1) that prior to the fire the insured had conveyed away the title to the frame building without notice to the insurer, and (2) that, with respect to the personal property contained in the frame building, the insured had failed to file the prescribed proof of loss within the ninety-one day period required by the policy. The case was tried to a jury and at the conclusion of the evidence the insurer moved for a directed verdict. The court granted the motion only so far as the same related to the insured's claim on the personal property contained in the building, and overruled the motion in so far as it related to the building. The court then submitted the case to the jury upon a single issue, reading: "Do you find from a preponderance of the evidence that on July 2, 1951, when the deed from Mrs. L. P. Walters and husband was executed, there was an agreement between the parties to convey the property to Ruby Walters in trust for Nancy Walters?" To which the jury answered, "Yes." In connection with said special issue, the court defined the term "in trust" as meaning "a conveyance whereby the trustee obtains and holds no interest in the property other than for the exclusive use and benefit of another."

After the verdict was returned, the insurer filed a motion for judgment notwithstanding the verdict, which the court granted and accordingly, by reason of the aforesaid directed verdict with reference to the insured's claim for the loss of personal property and by reason of having granted the said motion for judgment notwithstanding the verdict, the court rendered judgment that the insured take nothing.

The insured, Mrs. L. P. Walters, who is also sometimes referred to in the record as Nancy Walters, has predicated this appeal upon six points, to the effect: that the court erred in granting the insurer's motion for judgment non obstante veredicto because (1) there was no change in ownership of the insured property of such a nature as to void the insurance, and (2) there was no evidence that the change of the title to the property insured was calculated to increase the motive to burn the insured property, and further (3) there was insufficient evidence that the change of such

title was of such nature as was calculated to increase the motive to burn the insured property. That the court further erred in that it granted the insurer's motion for a directed verdict with reference to the insured's claim for loss of personal property, (4) because there was sufficient evidence to raise the issue of waiver of proof of loss, (5) because there was sufficient evidence to raise the issue of estoppel of the insurer to deny that the proof of loss made by the insured was sufficient, and (6) because the insured made substantial compliance with the proof of loss required by the policy of insurance.

We are constrained to overrule the insured's first three points. It will be noted that they are addressed to what the insured claims in each instance is reversible error committed by the court in connection with the insurance company's defense against liability with respect to the cafe building. The company's defense with respect to the cafe building was based upon this provision of the policy, "Unless otherwise provided in writing added hereto, this company shall not be liable for loss * * * following a change of ownership of the insured property."

The insurance company claimed that after the insurance was taken out and prior to the fire there was "a change of ownership of the insured property" and based that claim upon the following fact; namely, that on July 2, 1951, the insured, joined by her husband, by a general warranty deed, upon a recited consideration of $10 and other valuable considerations, conveyed the tract of land upon which the cafe building was located to her daughter, Ruby Walters. The evidence showed that there was in fact no consideration paid by Ruby Walters for said conveyance and that she never at any time claimed to own the property adversely to her mother.

The occasion for the conveyance was this: The insured had owned a tract of land consisting of 5 acres which fronted on Highway No. 75, also known as the Houston-Dallas Highway, for many years prior to January 25, 1951, when she took out the insurance here sued on. The county had determined to widen the aforesaid highway and for that purpose undertook to negotiate with the insured's husband to purchase the entire tract of 5 acres. There was located upon said 5 acres and fronting immediately on the highway the aforesaid cafe building. Back of the cafe building was another small building used as sleeping quarters by the insured, her husband and daughter, and not far removed therefrom was also located a garage. The insured's husband and the representative of the county had reached a situation where they apparently could no longer negotiate, but before their negotiations had broken off, the county had offered $11,000 for the entire 5-acre tract. The insured believed that her daughter (a mature woman who had been married three times) could carry through the negotiations with the representatives of the county, and it was for the purpose of handling the negotiations for the property which the county desired to get that she caused the deed to be made to her daughter.

In the meanwhile, the county's representatives had also decided that the negotiations were hopelessly deadlocked and had instituted condemnation proceedings before they had knowledge of the deed of conveyance to Ruby Walters. And in this condemnation proceeding the insured and her husband as well as the daughter who resided on the premises were made parties defendant. At this time Ruby Walters and the representatives of the county came to an agreement, and said agreement was entered as an agreed judgment in the condemnation proceedings, and under said agreed judgment, the county acquired about one acre out of the 5-acre tract which fronted some thousand feet on the highway (being the entire length of the 5-acre tract), and the said agreed judgment provided that the defendants in the condemnation proceedings should receive $1,048.92 for the approximately 1-acre tract of land so condemned; and that defendants should further be paid $3,455 as being the expenses of moving the buildings off of the condemned portion of the tract, and defendants were further awarded by said agreement the sum of $3,051.08 as damages to the balance of the

land not condemned. It was further provided in the judgment that the defendants should remove the improvements off of the condemned land not later than August 20, 1951, but no penalties were provided in case the defendants failed to remove the improvements off of the condemned land by the said date.

■ As indicated above, the cafe building burned on August 26, 1951, which was six days later than the defendants were obligated to remove the buildings off of the condemned portion out of the 5-acre tract. Under authority of New Orleans Insurance Co. v. Gordon, 68 Tex. 144, 3 S.W. 718, if, after the conveyance had been made to Ruby Walters, no progress had been made in transferring the title to the 5-acre tract or any part thereof, and the fire had occurred while title remained in her name, the insurance company would have been liable on the policy notwithsanding the provision in question. At page 149 of 68 Tex., at page 720 of 3 S.W. the court quoted with approval from Ayres v. Hartford Fire Insurance Co., 17 Iowa 176, at page 186, the following: " 'If there is no change in the fact of title, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated.' "

Furthermore, had we been confronted in this case with the situation that the insured joined by her husband had conveyed the 5-acre tract to a third party, but had reserved in writing the right to remove the insured building therefrom, and the building had burned down before the time for its removal had expired the insurer would have been entitled to recover on her policy. Insurance Co. of North America v. O'Bannon, 109 Tex. 281, 206 S.W. 814, 1 A.L.R. 1407.

Appellee contends, however, that neither of the cited authorities is applicable to the facts here before the Court. This, because Ruby Walters was authorized by the insured to pass title to the 5-acre tract or any part thereof to the county, and that she in

fact did pass the title by the agreed judgment to the county; that the fact that she passed the fee simple title to one acre of ground to the county necessarily demonstrates that she had the fee simple title which the county acquired. As supporting its position, the insurance company relied on Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885, opinion adopted by the Supreme Court.

As we understand the insurance company, it is their position that when Ruby Walters agreed to the judgment in the condemnation proceedings, she, by that action, ceased to be a mere trustee and became the owner of the 5-acre tract and the buildings thereon with the same character of title as she had to have in order to pass a fee simple title to the county to the one-acre tract of land. Whatever rights Ruby Walters held in the land deeded to her, we think that under the facts of this case such a change of ownership of the insured property took place as relieved the insurance company from liability for loss of the cafe building.

■ The reason for this conclusion is that under the evidence most favorable to the insured, the cafe building was not worth in excess of $5,200 as it stood upon the 5-acre tract. Upon the trial of this case, a witness of the insured testified, upon cross-examination, that, in view of the fact the cafe building had to be removed, it had only a junk value of $600. This evidence was not contradicted. The cafe building was much larger than either the garage or the building back of the cafe building, used as living quarters. The agreed judgment in the condemnation proceedings showed that $3,455 was allowed for the expense of removing the improvements from the condemned portion of the 5-acre tract. It is obvious, as a matter of law, that it would be to the advantage of the insured to collect $5,000 insurance for the loss of the cafe building and keep the expense money which was to have been used to remove said building. Consequently, such a change in the ownership of the insured cafe building had occurred which was calculated to increase

282

the motive to burn, or diminish the motive to guard the property from loss by fire. Therefore, the court did not err in sustaining the insurance company's · motion for judgment notwithstanding the verdict.

We are constrained to overrule insured's points 4, 5 and 6 relating to the insured's claim for loss of personal property contained in the cafe building which was insured to the extent of $2,500. This, because we think that evidence was not sufficient to' raise the issue of waiver of proof of loss, or to raise the issue of estoppel of the insurance company to deny that the proof of loss made by the insured complied with the requirements of the policy; and because under the evidence, the insured did not make any substantial compliance with the proof of loss required by the policy.

The evidence shows that the insured was an ignorant, uneducated woman, and we think we may say that the evidence makes it clear that she was not capable of understanding how to comply with the requirements of the proof of loss. The requirements with respect to the proof of loss, specified in the policy, did not materially differ from the requirements of proof of loss dealt with in Provident Fire Ins. Co. v. Ashy, 139 Tex. 334, 162 S.W.2d 684. The evidence here reflects that a day or two after the fire occurred an adjuster went out to the premises where the fire had occurred and gave the insured some blank paper and apparently told her to make out a proof of loss thereon. The insured listed some property thereon, but the evidence does not show what such listing consisted of. The adjuster went back and saw the paper which she had prepared and told her that the items which she had listed were not sufficiently broken down and not properly set out. He explained that there should be but one item to a line, and that opposite each item the value of it should be set down. Thereafter the insured prepared a list of items which complied with the adjuster's instructions to the extent that but one item was made to appear on the line, and opposite thereto were written the figures which

were evidently intended to state the value of such items. This second list she then mailed to the adjuster. The list as so finally prepared by the insured was not signed,. and no statement was made thereon as to· how the fire occurred nor was it verified. In a word, the paper did not comply with the requirements of the proof of loss as specified by the policy. The adjuster did not see the last list before the insured mailed it. The list in question came into· the possession of the insurance company. It was not returned to the insured as not being a proper proof of loss. It was not the· obligation of the insurance company to aid. or instruct the insured what to do in order· to make out a proof of loss which complied with the requirements of the policy. Such was held in the Ashy case, supra. Here, from the evidence, we are impressed that without assistance, the insured was simply not able to make out the proof of loss as required by the policy of insurance. The insurance company was not bound to render required assistance.

The insured testified that she went· to the office of the insurance company in. Houston and had a conversation with the insurance company's attorney-in-fact, a Mr. Castle, and was by him informed that it · was the adjuster's fault that the insurance· had not been settled and that the matter· would be settled, and that she would get her money, and the insured testified she believed this and that no other forms or material were furnished to her. She further· testified that she had been to the insurance· company's Houston office but once; that. she did not know the date when she did so,. and when questioned as to whether or not it was on December 5, 1951, she at first answered, "I am going to say I went to him; in plenty of time to settle before 90 days,. if it had been settled, but I don't remember the day of the month." ˎShe then testified she didn't remember whether the conversation with the man at the insurance company's office took place prior to December 5, 1951, or not, and when further questioned by the insurance company's lawyer, she testified she believed that he was trying to make her tell a lie. The questions then

asked her, and her answers were as follows:

"Q. I want you to tell the truth. A. I have been trying to tell the truth all the time, and you want me to tell a lie.

"Q. You are not going to say it happened before? (December 5, 1951) A. I am not going to say something I don't know."

The evasiveness of the insured's answers authorized the court to take the witness' answers to mean that she did not go to the insurance company's Houston office prior to December 5, 1951, which was the date that Mr. Castle fixed as being that date when she was at the insurance company's office from a letter he caused to be written to the Dallas office, and which was after the expiration of the 91 days in which proof of loss had to be made. It was not error for the court to take from the jury the issue of insurance on the personal property.

The judgment must be affirmed.

Affirmed.